UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:19-CV-00155-JHM

RANDY BRANSON, ET AL.                                                                PLAINTIFFS

V.

ALLIANCE COAL, LLC
WEBSTER COUNTY COAL, LLC
ALLIANCE RESOURCE PARTNERS, LP
ALLIANCE RESOURCE OPERATING PARTNERS, LP
WARRIOR COAL, LLC
RIVER VIEW COAL, LLC                                                                 DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Alliance Resource Operating Partners' Motion to Dismiss for Lack of Personal Jurisdiction. [DN 57]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's motion is **DENIED WITHOUT PREJUDICE**.

### I. BACKGROUND

According to the Amended Complaint, three coal mines in western Kentucky systemically underpaid their employees for several years. [DN 23]. Plaintiffs, employees of those coal mines, brought this collective action under the Fair Labor Standards Act and class action under the Kentucky Wage and Hour Act to recover unpaid wages. [*Id.*].

Plaintiffs sued six defendants: the three coal mines that allegedly underpaid them and three parent companies. The three parent companies are Alliance Coal LLC, Alliance Resource Operating Partners, LP ("AROP"), and Alliance Resource Partners, LP ("ARLP"). ARLP is at the top of the web—it owns 98.989 percent of AROP, which in turn owns 99.999 percent of Alliance Coal. [DN 23 at 2, ¶ 1 n.1]. Alliance Coal owns all three coal mines. [*Id.*]. All three

1

parent companies are incorporated in Delaware and have the same principal place of business in Oklahoma. [*Id*. at 5, ¶¶ 14–16].

AROP, the "middle" parent defendant, moves to dismiss the case against it for lack of personal jurisdiction. [DN 57]. It claims it is not at home in the Commonwealth of Kentucky, nor has it purposefully availed itself of the privilege of doing business in the Commonwealth. [DN 57-1 at 4–7]. In an affidavit supporting the motion to dismiss, an AROP representative asserted that AROP has no employees or officers, is licensed to conduct business in Delaware and Oklahoma only, and has no Kentucky office. [DN 57-2 at ¶¶ 3–5]. Plaintiffs, relying on publicly available information, assert AROP is subject to personal jurisdiction because it represented it was a Kentucky resident in a previous case, the individuals working for AROP reside in Kentucky, and AROP is an alter ego of the other Alliance entities. [DN 126 at 9–11]. In the alternative, Plaintiffs ask to conduct jurisdictional discovery. [*Id*. at 11–13].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) governs dismissal of a case based on lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "The plaintiff bears the burden of establishing that jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When faced with a properly supported Rule 12(b)(2) motion, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*.

A court considering a Rule 12(b)(2) motion has three procedural options: "[I]t may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id*. If the court does not conduct an evidentiary hearing or order jurisdictional discovery, the plaintiff

"need make only a prima facie showing that personal jurisdiction exists." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). The court must not "weigh the controverting assertions of the party seeking dismissal" when determining whether the prima facie case is satisfied. *Theunissen*, 935 F.2d at 1459. If jurisdiction hinges on facts not readily available to the plaintiff, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Lindsey v. Cargotec USA, Inc.*, No. 4:09-cv-71-JHM, 2010 WL 3397355, at *1 (W.D. Ky. Aug. 26, 2010) (quoting *Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

### III. DISCUSSION

A federal court can exert personal jurisdiction over a defendant if the defendant's continuous and systematic contacts render it "essentially at home in the forum state" (general jurisdiction) or if the defendant has minimum contacts with the forum state and the litigation derives from those contacts (specific jurisdiction). *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Further, the exercise of personal jurisdiction must not violate the state long-arm statute. *See* FED. R. CIV. P. 4(k)(1)(A). Kentucky's long-arm statute is narrower than the federal due process clause. KY. REV. STAT. § 454.210; *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56–57 (Ky. 2011). Thus, for a Kentucky court to exercise specific jurisdiction over a nonresident defendant, it must determine the defendant's conduct falls within the enumerated categories of § 454.210(2)(a) and the conduct satisfies the federal due process inquiry.[1] *See Pinkerton Tobacco Co., LP v. Kretek Int'l, Inc.*, No. 4:20-cv-24-JHM, 2020 WL 5648136, at *2 (W.D. Ky. Sept. 22, 2020) ("[T]he Court must first

---

[1] Because the Kentucky long-arm statute applies only to nonresident defendants, it does not limit the general jurisdiction analysis. *See* KY. REV. STAT. § 454.210(2)(a).

determine if personal jurisdiction is proper under Kentucky's long-arm statute. If so, the Court will then turn to the federal due process analysis.").

Plaintiffs assert that AROP is amenable both to general jurisdiction and specific jurisdiction in the Commonwealth. In making this argument, Plaintiffs put forth two separate theories. First, they claim AROP is subject to general jurisdiction because it is "at home" in Kentucky. Second, they argue AROP is both subject to general jurisdiction and specific jurisdiction as an "alter ego" of its parent company, ARLP, and its subsidiary Alliance Coal. The Court will consider these two theories in turn.

### A. General Jurisdiction

General jurisdiction renders a defendant amenable to suit in the forum state for "any and all claims" against it, even claims unrelated to the defendant's activities in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a court to exert such "all-purpose jurisdiction" over a defendant, it must find the defendant's forum contacts are so "continuous and systematic" as to render it "essentially at home" in the forum state. *Id*. at 137, 139 (quoting *Goodyear*, 564 U.S. at 919). Typically, a corporation is "at home" in the state of incorporation and principal place of business. *Daimler*, 571 U.S. at 137. But general jurisdiction is not necessarily limited to those two venues. *See id*. (recognizing that, although the state of incorporation and principal place of business are the paradigmatic all-purpose forums, a corporation could be subject to general jurisdiction in another location). In *Perkins v. Benguet Consolidated Mining Co.*, the Supreme Court held that a corporate defendant, located and headquartered in the Philippines, was subject to general jurisdiction in Ohio because, during the time period in question, the company's

president directed all the company's activities from his Ohio home. 342 U.S. 437, 447–48 (1952).[2]

AROP is incorporated in Delaware with its principal place of business in Oklahoma. [DN 23 at 5, ¶ 16]. But AROP's principal place of business is not very insightful because, according to AROP, it has no officers or employees. [DN 57-2 at 2, ¶ 4]. As *Perkins* demonstrates, the formal designation is not dispositive—the important factor is where the business is actually run. Even though AROP has no officers or employees, someone is making AROP's business decisions and running its business operations. Plaintiffs believe that person is in Kentucky. They produced some information to support that claim: (1) the individual who submitted AROP's jurisdictional affidavit, R. Eberly Davis, previously stated under oath that he was a Kentucky resident and (2) Dun & Bradstreet's corporate profile for AROP lists Joseph W. Craft III as AROP's "Key Principal"; Plaintiffs assert Craft is a Kentucky resident. [DN 126-4 at 3, ¶ 10; DN 126-6; DN 126 at 6].

If one or more of these individuals handles most or all of AROP's business operations from Kentucky, AROP could be "essentially at home" in the Commonwealth. *See Daimler*, 571 U.S. at 137; *Perkins*, 342 U.S. at 447–48; *Bird v. Parsons*, 289 F.3d 865, 873–74 (6th Cir. 2002) (declining to assert general jurisdiction over a defendant absent evidence that the defendant "directs its business operations from [the state]"). On the record so far, the Court cannot say Plaintiffs have made the required prima facie showing. Plaintiffs have, however, provided enough evidence to warrant jurisdictional discovery. *See Lindsey*, 2010 WL 3397355, at *1 ("Although the plaintiff bears the burden of demonstrating facts that support personal

---

[2] The Supreme Court recently reaffirmed *Perkins* as the "textbook case of general jurisdiction appropriately exercised over a foreign corporation." *Goodyear*, 564 U.S. at 928 (quoting *Donahue v. Far E. Air Transp. Corp.*, 652 F.2d 1032, 1037 (D.C. Cir. 1981)).

5

jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.").

### B. Alter Ego Theory

Plaintiffs also assert that AROP is "essentially the same entity" as ARLP and the Alliance subsidiaries—thus, because ARLP and the subsidiaries are "at home" in Kentucky for personal jurisdiction, AROP is too.[3] [DN 126 at 9]. The Court may assign the other Alliance entities' Kentucky contacts against AROP only if AROP is an "alter ego" of the other entities. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). When determining whether AROP is an alter ego of the other Alliance entities, federal common law applies to Plaintiffs' federal law claims and Kentucky law applies to Plaintiffs' state law claims. *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848–49 (6th Cir. 2017).

#### i. Federal Law

"To satisfy the alter-ego test" under federal common law, a plaintiff "must demonstrate 'unity of interest and ownership' that goes beyond mere ownership and shared management personnel." *Anwar*, 876 F.3d at 849 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)). When examining unity of interest and ownership, courts consider factors such as whether the defendants exert control over daily business operations, "share[ ] the same management and supervision, operate[ ] at the same location, use[ ] the same phone lines and office materials, work[ ] in the same industry[,] and interchange[ ] services at times." *Anwar*, 876 F.3d at 849 (citing *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 737 (6th Cir.

---

[3] Plaintiffs' specific jurisdiction argument rests on this same alter-ego theory. [DN 126 at 11–12]. Plaintiffs argue the "purposeful availment" prong of the specific jurisdiction test is satisfied because "AROP purposely availed itself of Kentucky by virtue of the partnership owners residing and conducting business in Kentucky and the alleged FLSA and state wage and hour law violations occurred in Kentucky." [*Id*. at 11]. The "partnership owners" Plaintiffs describe are ARLP's partners, and the subsidiaries allegedly committed the wage and hour violations. These allegations are attributable to AROP only if AROP is the alter ego of the other entities.

6

2003)). In *Anwar*, the Sixth Circuit found a plaintiff could not establish an alter ego relationship against a company's foreign subsidiary, even though the foreign subsidiary had the same parent corporation as the U.S. subsidiary, because the subsidiaries used different addresses and phone lines, did not share employees, and kept separate records and financial statements. *Id*. at 850. The court also noted that the plaintiff failed to allege the foreign subsidiary controlled the daily affairs of the U.S. subsidiary. *Id*.

Plaintiffs have yet not made the required prima facie showing that AROP is an alter ego of the other Alliance entities. Plaintiffs provided the following facts that weigh on the prima facie case: (1) AROP has the same address as the other Alliance entities [DN 23 at 5]; (2) AROP shares some of the same managers as the other Alliance entities; and (3) ARLP and AROP exert some control over the subsidiaries. [DN 126 at 3–5]. Although these facts provide a closer case than *Anwar*, they do not meet the prima facie requirement. *Cf. Anwar*, 876 F.3d at 850. Notably, Plaintiffs alleged no facts suggesting ARLP controls AROP's daily business activities or that AROP keeps the same records as the other entities.

Certain facts that Plaintiffs allege do not weigh heavily on the federal alter ego test. For example, Plaintiffs' Amended Complaint alleges that ARLP owns 98.989 percent of AROP and AROP, in turn, owns 99.999 percent of subsidiary Alliance Coal. [DN 23 at 2, ¶ 1 n.1]. But "mere ownership" is insufficient absent additional facts establishing an alter ego relationship. *See Anwar*, 876 F.3d at 849; *Niemi v. NHK Spring Co.*, 543 F.3d 294, 308 (6th Cir. 2008) ("[A] company does not purposefully avail itself of the privilege of doing business in the forum state merely by owning a corporation subject to jurisdiction."). And although AROP may hold itself out to the public as "one and the same" as ALRP and the Alliance subsidiaries, [DN 126 at 3–5], external representations do not establish an alter ego relationship.

The Court believes jurisdictional discovery is warranted, however, on a potential alter ego relationship between ARLP and AROP.  The two partnerships share the same address, work in the same industry, and Joseph Craft III and R. Eberly Davis (the two individuals affiliated with AROP) are on ARLP's leadership team.  [DN 126-5 at 2].  These similarities warrant an inference that ARLP and AROP share a "unity of interest and ownership" sufficient to create an alter ego relationship.  *Anwar*, 876 F.3d at 849.  If jurisdictional discovery reveals that AROP is a shell company for ARLP, it could provide a basis for imputing ARLP's Kentucky contacts to AROP for personal jurisdiction.  *See Oyuela v. Seacor Marine, Inc.*, 290 F. Supp. 2d 713, 722 (E.D. La. 2003) ("[W]hen an affiliate is nothing more than a 'shell,' it can be considered an agent or alter ego of the parent or its co-affiliate and their contacts with the forum can subject the 'shell' company to jurisdiction.").

Conversely, however, discovery is not warranted on the relationship between AROP and the Alliance subsidiaries.  Plaintiffs have not made a showing that AROP, a company with few if any employees or officers and no evident business operations, was controlling the day-to-day functions of Alliance Coal and the other subsidiaries.

  ii. **State Law**

Kentucky law applies a different test for alter ego relationships, but the Court reaches the same result—jurisdictional discovery is warranted for the relationship between ARLP and AROP, but not for the relationship between AROP and the subsidiaries.

For a plaintiff to pierce the corporate veil under Kentucky law,[4] the court must find "both this element of domination and circumstances in which continued recognition of the corporation as a separate entity would sanction a fraud or promote injustice."  *Inter-Tel Techs., Inc. v. Linn*

---

[4] Absent a state court case applying an alter-ego test to determine personal jurisdiction, the Sixth Circuit looks to state laws on piercing the corporate veil.  *See Estate of Thomson*, 545 F.3d at 362–63 (applying general Ohio test for alter ego relationship to personal jurisdiction).

*Station Prop., LLC*, 360 S.W.3d 152, 155 (Ky. 2012). For the first element, domination, the Kentucky Supreme Court provided a list of factors for courts to consider:

> a) Does the parent own all or most of stock of the subsidiary?
> b) Do the parent and subsidiary corporations have common directors or officers?
> c) Does the parent corporation finance the subsidiary?
> d) Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?
> e) Does the subsidiary have grossly inadequate capital?
> f) Does the parent pay the salaries and other expenses or losses of the subsidiary?
> g) Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?
> h) Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?
> i) Does the parent use the property of the subsidiary as its own?
> j) Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?
> k) Are the formal legal requirements of the subsidiary not observed?

*Id*. at 163–64. The "most critical factors" are "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." *Id*. at 164.

As previously stated, Plaintiffs have provided evidence that ARLP and AROP's relationship satisfies some of these elements: ARLP owns nearly all of AROP, the partnerships share officers, and AROP has (apparently) no salaries or expenses. [DN 126 at 4, DN 126-5]. The remaining factors require insight into the partnership's internal structure, a difficult task without discovery. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 506 (6th Cir. 2020) (recognizing that an ordinary consumer "cannot know" details about a company's sales and internal processes without discovery). Jurisdictional discovery is warranted for the relationship between ARLP and AROP on Plaintiffs' state law claims.

Plaintiffs have not provided evidence, however, that AROP "dominates" the subsidiaries such that the subsidiaries are AROP's alter ego. Plaintiffs do not allege AROP treats the subsidiaries as part of itself, exerts day-to-day control over the subsidiaries' operations, or undercapitalizes the subsidiaries. *Cf. Inter-Tel*, 360 S.W.3d at 164. Instead, Plaintiffs' main allegations are that the "policies, protocols, guidelines, and internal monitoring system" all come from AROP and ARLP. [DN 126 at 9]. But policies and guidelines are the sort of the high-level decisions that often come from parent companies, not the sort of day-to-day decisions suggesting the parent company "dominates" the subsidiary. Therefore, the Court will not grant jurisdictional discovery into the relationship between AROP and the subsidiaries.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Alliance Resource Operating Partners' Motion to Dismiss for Lack of Personal Jurisdiction [DN 57] is **DENIED WITHOUT PREJUDICE**. No later than July 1, 2021, the parties shall complete discovery on the issue of personal jurisdiction. Following jurisdictional discovery, AROP may file a renewed motion to dismiss.

Joseph H. McKinley Jr., Senior Judge
United States District Court

March 15, 2021

cc: Counsel of Record