UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:19-CV-00155-JHM

RANDY BRANSON, ET AL.                                                    PLAINTIFFS

V.

ALLIANCE COAL, LLC
WEBSTER COUNTY COAL, LLC
ALLIANCE RESOURCE PARTNERS, LP
ALLIANCE RESOURCE OPERATING PARTNERS, LP
WARRIOR COAL, LLC
RIVER VIEW COAL, LLC                                                     DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion for Conditional Certification [DN 128] and Defendants' Motion to Hold Plaintiffs' Motion in Abeyance. [DN 140]. Fully briefed, this matter is ripe for decision. For the following reasons, Plaintiffs' motion [DN 128] is **GRANTED** and Defendants' motion [DN 140] is **DENIED**.

I. BACKGROUND

According to Plaintiffs' Amended Complaint, three coal mines in western Kentucky systemically underpaid their employees for several years. [DN 23]. Plaintiffs, nonexempt employees who worked in those three mines, bring this collective action under the Fair Labor Standards Act ("FLSA") and class action under the Kentucky Wage and Hour Act to recover unpaid wages. [*Id.*]. Only the FLSA allegations are relevant for the instant motion.

Plaintiffs' Amended Complaint alleges three types of FLSA violations. First, Defendants required uncompensated work before and after the shifts—employees needed to be ready fifteen minutes prior to their shift and spent significant time "donning and doffing" their mining gear before clocking in and after clocking out. [*Id.* at 8–13, ¶¶ 27–51]. Second, Defendants did not

1

include nondiscretionary bonus payments as part of employees' regular wages, so Plaintiffs' overtime payments were artificially low. [*Id*. at 13–21, ¶¶ 52–76]. Third, Defendants did not pay time-and-a-half when employees worked overtime. [*Id*. at 21–25, ¶¶ 77–106].

Shortly after Defendants answered Plaintiffs' Amended Complaint, the parties engaged in eight months of ADR. [DN 85]. The parties were not able to reach an amicable resolution and resumed litigation early this year. [DN 120]. Recently, Defendant Alliance Resource Operating Partners filed a motion to dismiss for lack of personal jurisdiction. [DN 57]. This Court denied the motion to dismiss without prejudice and ordered three months of jurisdictional discovery into whether Alliance Resource Operating Partners is (a) subject to general jurisdiction in Kentucky and (b) an alter ego of parent company Alliance Resource Partners. *Branson v. Alliance Coal, LLC*, No. 4:19-cv-155-JHM, 2021 WL 1031002 (W.D. Ky. Mar. 17, 2021) [DN 150]. That discovery process is ongoing. Discovery on all other matters recently opened, but the Magistrate Judge held the entry of a scheduling order in abeyance pending these motions. [DN 155].

Plaintiffs now move to conditionally certify a collective of coal miners who worked for one of the three defendant mines between May 19, 2017, and now, so they can send court-authorized notice to potential plaintiffs and give them an opportunity to opt into the action. [DN 128]. Defendants did not directly respond to Plaintiffs' motion; instead, they moved to hold Plaintiffs' motion in abeyance pending ninety days of discovery. [DN 140].

## II. STANDARD OF REVIEW

The FLSA permits an employee to bring a collective action on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). Unlike a Rule 23 class action, however, an FLSA collective action does not provide "opt out" procedures. *See Rogers v. Webstaurant, Inc.*, No. 4:18-cv-74-JHM, 2018 WL 4620977, at *1 (W.D. Ky. Sept. 26, 2018) ("A collective action

under the FLSA permits similarly situated employees to 'opt-in' to the action, unlike the opt-out approach typically utilized under [Rule] 23.").  Instead, any employee that wishes to join the FLSA collective action must opt into the litigation—he or she must give written consent filed with the court.  29 U.S.C. § 216(b).

The FLSA provides limited guidance about the inclusion of opt-in plaintiffs.  The statute requires only that opt-in plaintiffs are "similarly situated" to the lead plaintiff.  *Id.*  In lieu of statutory guidance, the Supreme Court acknowledged that district courts possess broad discretion to manage the joinder of opt-in plaintiffs.  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("We hold that district courts have broad discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs.").  A district court may use that discretion to "authorize notification of similarly situated employees to allow them to opt into the lawsuit."  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

Before a court may authorize notice to prospective opt-in plaintiffs, it must "consider whether plaintiffs have shown that the employees to be notified are, in fact, similarly situated." *Comer*, 454 F.3d at 546 (quotation omitted).  The "similarly situated" inquiry requires the court to analyze several factors, many of which require discovery.  *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) (outlining the "similarly situated" factors), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).  Thus, there is understandable tension between a plaintiff's desire to notify other potential plaintiffs early in litigation and the fact-intensive nature of the "similarly situated" inquiry.

District courts developed a two-step certification process to alleviate this tension.  The first step, which occurs at the start of discovery, requires a plaintiff to make a "modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members."

3

*Comer*, 454 F.3d at 546–47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). This step is known as "conditional certification." *White v. Baptist Mem'l Health Care*, 699 F.3d 869, 877 (6th Cir. 2012). It is a "fairly lenient standard, and typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547 (quotation omitted). The only practical significance of conditional certification is that the plaintiff can notify prospective opt-in plaintiffs. *See Hall v. Gannett Co.*, No. 3:19-cv-296, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021) ("The point [of conditional certification] is to inform potential members of the collective action at the outset . . . ."). The second step is final certification; it occurs "after all class plaintiffs have decided whether to opt in and discovery has concluded." *White*, 699 F.3d at 877. At this step, courts "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547.

Neither statute nor court rule requires a district court to use a two-step certification process. Nor is it required by Sixth Circuit precedent—the Sixth Circuit has recognized, but never required, district courts' use of the two-step procedure. *See White*, 699 F.3d at 877 ("District courts determine whether plaintiffs are similarly situated in a two-step process . . ."); *Comer*, 454 F.3d at 546–47 (recognizing that the district court applied the two-step process, but never stating it was required). Yet two-step certification remains common, both within this district and around the nation. *See, e.g.*, *York v. Velox Express, Inc.*, __ F. Supp. 3d __, No. 3:19-cv-92, 2021 WL 918768, at *2 (W.D. Ky. Mar. 10, 2021); *Hall*, 2021 WL 231310, at *2–4; *Marcum v. Lakes Venture, LLC*, No. 3:19-cv-231, 2020 WL 6887930, at *2–3 (W.D. Ky. Nov. 24, 2020); *Jones v. H&J Rest., LLC*, No. 5:19-cv-105, 2020 WL 759901, at *2–3 (W.D. Ky. Feb. 14, 2020); *Johnston v. J&B Mech., LLC*, No. 4:17-cv-51-JHM, 2017 WL 3841654, at *2–3 (W.D. Ky. Sept. 1, 2017); *Canaday v. Anthem Co.*, 441 F. Supp. 3d 644, 653 (W.D. Tenn. 2020).

4

### III. DISCUSSION

#### A. Two-Step Certification & *Swales*

The first issue the Court must decide is whether to make a conditional certification decision at all.  As stated above, two-step certification is the most common method for notifying the collective in FLSA actions.  But Defendants ask the Court to follow a different path.  Rather than decide conditional certification now, Defendants seek to hold Plaintiffs' motion in abeyance for ninety days while the parties conduct limited discovery.  At the end of ninety days, Defendants ask the Court to fully analyze whether plaintiffs are "similarly situated."

Two-step certification typically reserves Defendants' full "similarly situated" request for step two of the certification process, after notice is sent, all opt-in plaintiffs have joined, and discovery is complete.  Thus, the substance of Defendants' motion seeks to toss aside two-step certification in favor of one omnibus certification decision *before* Plaintiffs may send court-authorized notice.

The limited guidance provided by the Supreme Court guides the Court's resolution of this issue.  In *Hoffman-La Roche*, the Supreme Court "confirm[ed] the existence of the trial court's discretion" to facilitate notice of a pending collective action to potential plaintiffs.  *Hoffman-La Roche*, 493 U.S. at 170.  The Court recognized that "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity," but those benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Id*.  Court-authorized notice is desirable to "expedite disposition of the action," avoid multiple lawsuits, and prevent plaintiffs' counsel from soliciting collective members with "misleading communications." *Id*. at 171–72.  The Court

5

noted, however, that district courts must only serve a managerial role and must "avoid even the appearance of judicial endorsement of the merits of the action." *Id*. at 174.

Two-step certification effectively implements *Hoffman-La Roche*'s guidance.  Providing notice at the beginning of discovery expedites disposition of the case.  It provides the parameters of the litigation early on, which helps courts structure discovery and ensures there will not be duplicative litigation.  It also clarifies the status of opt-in plaintiffs who joined the action without court involvement. *See generally* Carl Engstrom, Note, *What Have I Opted Myself Into? Resolving the Uncertain Status of Opt-in Plaintiffs Prior to Conditional Certification in Fair Labor Standards Act Litigation*, 96 MINN. L. REV. 1544 (2012).

Resisting this conclusion, Defendants ask the Court to follow the Fifth Circuit's recent decision in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021).  *Swales* rejected two-step certification and required district courts to make a holistic determination that plaintiffs were "similarly situated" before authorizing notice. *Id*. at 441.  For several reasons, the undersigned chooses not to follow *Swales*.  First, factual discrepancies abound between *Swales* and the instant case.  In *Swales*, the parties engaged in "significant discovery" before the conditional certification motion; the plaintiff asked the district court to ignore the discovered evidence for the conditional certification inquiry. *Id*. at 438.  Comparatively, a scheduling order has not been entered in this case.  [*See* DN 155].  Second, the certification issue and merits issue were intertwined in *Swales*; here, the "similarly situated" question is divorced from the merits. *See Swales*, 985 F.3d at 441–42 (recognizing that, in a donning and doffing case, "a district court will not likely need mountains of discovery to decide whether notice is appropriate").

More fundamentally, however, *Swales* rested on rationale that does not apply in the instant case.  *Swales*, relying on a prior Fifth Circuit case, stated courts should make a merits decision

before alerting prospective opt-in plaintiffs because "alerting those who cannot ultimately participate in the collective merely stirs up litigation." *Swales*, 985 F.3d at 441 (quoting *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019)). It considered court-authorized notice the sole method of "alerting" prospective plaintiffs. Without notice, *Swales* assumed, opt-in plaintiffs would remain out of the litigation. That rationale simply does not apply here. Plaintiffs' counsel, with no judicial involvement, has added more than ninety opt-in plaintiffs since this litigation began. New filing consents are filed seemingly every other day. The Court exercised no role whatsoever in Plaintiffs' counsel's solicitation of these potential plaintiffs. The Court does not know whether they were induced by "misleading communications." *See Hoffman-La Roche*, 493 U.S. at 171. The Court has no clue whether they are "similarly situated" to the lead plaintiff. *See* 29 U.S.C. § 216(b). Absent court-authorized notice, the collective will only continue to expand. But instead of expanding based on approved language and communication methods, it will expand without any judicial oversight. This is the very issue *Hoffman-La Roche* warned against. *Hoffman-La Roche*, 493 U.S. at 170–71 ("[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.").

"A trial court can better manage a major [FLSA] action if it ascertains the contours of the action at the outset." *Hoffman-La Roche*, 493 U.S. at 171–72. Two-step certification is the best method for the Court to exert some control over the process by which opt-in plaintiffs join this litigation. It forces Plaintiffs to make a modest showing that they are "similarly situated" before sending notice or adding any more opt-in plaintiffs, thus screening out obviously deficient claims. It limits how Plaintiffs' counsel can solicit opt-in plaintiffs. And it sets a date certain for joinder, providing the court and parties with clarity about the case's scope. If the Court follows

Defendants' proposed timeline, it will be another six months (between discovery, conference, and motions) before the Court explores the "similarly situated" question at all. If past is precedent, Plaintiffs' counsel will likely file dozens (if not hundreds) of new filing consents in that time. There will be two years of litigation and well over one hundred opt-in plaintiffs before the Court makes *any* determination whether plaintiffs are "similarly situated." In this case, that tradeoff is not worthwhile. The lynchpin of *Hoffman-La Roche* is the trial court's need to facilitate the "orderly, sensible" joining of parties. *Hoffman-La Roche*, 493 U.S. at 170. Two-step certification is the best method to facilitate an orderly process in this case. *Accord Brewer v. Alliance Coal, LLC*, No. 7:20-cv-41, 2021 WL 1307721 (E.D. Ky. Apr. 6, 2021).

### B. Additional Briefing

Having denied Defendants' motion to hold in abeyance, the next question is whether Defendants should have additional opportunity to respond to Plaintiffs' motion for conditional certification. Defendants did not directly respond to Plaintiffs' motion—they only filed a motion to hold in abeyance, although the motion includes some substantive disputes. [DN 140 at 9–14]. Typically, when the Court denies a motion to hold in abeyance, it gives the party an additional opportunity to respond.

Here, however, the Court finds Defendants are not entitled to an additional response. Defendants artfully labeled their motion a "motion to hold in abeyance" and structured their requested relief accordingly—ninety days of discovery before responding to Plaintiffs' motion. [DN 140 at 16]. But this requested relief is completely illogical. Plaintiffs' motion is premised on the current undeveloped record—they base their arguments on pleadings and affidavits and assume the Court will analyze their motion under the traditional pre-discovery framework recognized in *Comer*. If the Court granted Defendants' request, Defendants would respond to Plaintiffs' motion

with a completely different factual record and the Court would evaluate the motion under a more stringent standard.  In short, if the Court granted Defendants' proposed relief, Plaintiffs' motion would be worthless.

Defendants' motion does not substantively request this illogical relief.  Defendants ask the Court to follow *Swales*, a case that "reject[ed]" conditional certification.  *Swales*, 985 F.3d at 441. And a section of Defendants' brief is titled "Nothing in the FLSA contemplates 'conditional' certification."  [DN 140 at 6].  Defendants substantively seek to *deny* Plaintiffs' motion for conditional certification.  They do not substantively ask to *hold it in abeyance*.

For these reasons, the Court finds that Defendants' filings constituted their response to Plaintiffs' motion and Defendants are not entitled to additional briefing.  The Court will treat Defendants' filings as a response and sur-reply to Plaintiffs' motion for conditional certification.

## C. Conditional Certification

Plaintiffs seek conditional certification so they can send notice to prospective members of the following collective: "all individuals who work or have worked as coal miners at the Dokiti, Warrior/Cardinal, and River View mines between May 19, 2017 and the present."  [DN 128 at 2]. For the Court to grant the motion, Plaintiffs must make a modest factual showing that their "position is similar, not identical, to the positions held by the putative class members."  *Comer*, 454 F.3d at 546–47 (quoting *Pritchard*, 210 F.R.D. at 595).  Plaintiffs are similarly situated if they "suffer from a single, FLSA-violating policy, and when proof of that policy . . . proves a violation as to all the plaintiffs," or when their claims are "unified by common theories of defendants' statutory violations."  *O'Brien*, 575 F.3d at 585.  At the conditional certification stage, however, "a court 'does not generally consider the merits of the claims, resolve factual disputes, or evaluate

credibility.'" *York*, 2021 WL 918768, at *2 (quoting *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016)).

Plaintiffs' lawsuit contains three categories of allegations. The first set of allegations involve unpaid time worked before scheduled shifts. [*See* DN 23 at 8–13, ¶¶ 27–51]. According to Plaintiffs, all three mines required employees to arrive early and stay after their scheduled shifts so they could change into and out of their mining gear. Plaintiffs also allege that the mines required all employees to be dressed and ready fifteen minutes prior to their scheduled shift. [*Id*. at 9, ¶ 28]. Yet, the mines did not pay employees until the official start of the shift. [*Id*. at 9, ¶ 30]. Plaintiffs produce ten affidavits from employees engaged in various jobs at the three mines, all of whom assert a company policy requiring employees to "be ready for work 15 minutes before [the] scheduled start time" and the extensive time spent "donning and doffing" their mining gear. [*E.g.*, DN 128-6 at 2–3, ¶ 13–20]. The Amended Complaint also includes a document from the Warrior Coal mine (one of the three defendant mines), given to new employees, stating "You must be dressed and ready 15 minutes prior to your shift." [DN 23-1].

With this evidence, Plaintiffs have made a "modest factual showing" that their position is similar to other members of the collective. *See Comer*, 454 F.3d at 546–47. Specifically, they allege that all employees needed to don (and doff) their mining gear before (and after) their shifts and that all employees needed to be ready fifteen minutes early. Employees in several types of mining jobs were similarly affected by this policy, as evidenced by the ten affidavits alleging similar facts. Whether these policies violated the FLSA is the ultimate question in this litigation; at this stage, the Court's only consideration is whether all potential opt-in plaintiffs were subject to the same policies. Plaintiffs unquestionably allege that they were. Courts in this district regularly grant conditional certification on similar allegations of companywide policies requiring

uncompensated work. *See Hall v. Gannett Co.*, No. 3:19-cv-296; 2021 WL 231310, at \*2–3 (W.D. Ky. Jan. 22, 2021) (alleged companywide policy requiring call-center employees to read email before starting shifts); *Marcum v. Lakes Venture, LLC*, No. 3:19-cv-231, 2020 WL 6887930, at \*2–3 (W.D. Ky. Nov. 24, 2020) (alleged companywide policy requiring employees to work through lunch breaks).

Defendants only briefly dispute these allegations, arguing that the fifteen-minutes-early and donning-and-doffing policies did not exist. [DN 140 at 12]. But this argument is not persuasive because the Court does not resolve factual disputes at the conditional certification stage. *See York*, 2021 WL 918768, at \*2. Nor is it relevant that Plaintiffs may have received paid lunch breaks that offset any uncompensated pre-shift work. [DN 140 at 13–14]. That goes to the merits of the alleged FLSA violations, not whether the employees were similarly situated. *See Hall*, 2021 WL 231310, at \*3 ("The conditional-certification stage is not the proper time for the Court to . . . determine whether the policy violates the FLSA.").

Defendants also dispute whether the employees are similarly situated for Plaintiffs' second and third sets of allegations: failure to pay time-and-a-half for overtime and failure to include nondiscretionary bonuses in salary calculations. Defendants claim the collective is not similarly situated for those allegations because the three mines had individualized policies handling overtime, pay discrepancies, and meal breaks, so each plaintiff's claims would be different. [DN 140 at 9–11]. But the Court need not resolve whether the collective is similarly situated for these allegations, because they amply alleged the collective is similarly situated for the donning-and-doffing and fifteen-minutes-early policies. Even if discovery reveals differences between employees based on overtime payments and meal breaks, the Plaintiffs would still be similarly situated for their donning-and-doffing and fifteen-minutes-early allegations. And neither party

20

Case 4:19-cv-00155-JHM-HBB   Document 167   Filed 04/20/21   Page 12 of 13 PageID #: 1904

suggests the collective is *larger* for the time-and-a-half or nondiscretionary bonus allegations than the other allegations—Plaintiffs assert it is the same group of opt-in plaintiffs. [DN 152 at 14–15]. This alleged similarity is sufficient to grant conditional certification and notify the collective. Defendants remaining substantive arguments are best suited for the decertification stage, when the Court will fully consider whether Plaintiffs are similarly situated.

### D.  Content of the Notice

"After determining that conditional certification is warranted, the Court must address the substance of the notice to be sent to similarly situated employees." *Marcum*, 2020 WL 6887930, at \*4. The Court serves an oversight role to ensure notice is "timely, accurate, and informative," but must "take care to avoid even the appearance of judicial endorsement of the merits." *Hoffman-La Roche*, 493 U.S. at 172, 174.

Although Defendants raised no objection to Plaintiffs' proposed notice, [*see* DN 128-2], the oversight role contemplated by *Hoffman-La Roche* indicates that district courts must exert some control over the notice's content anyway. And because Defendants' briefing focused on procedural arguments, the Court does not consider their lack of objection as indicative of assent. The undersigned is hesitant to dictate the notice's content without input from Defendants.[1]

The Court orders the parties to meet and confer **within the next fourteen (14) days** in an effort to agree upon the content and distribution of the proposed notice. If an agreement is reached, an Agreed Order shall be submitted for the Court's approval **within twenty (20) days of the date**

---

[1] The Court finds, however, that Plaintiffs can notify all employees who worked in the designated jobs after May 19, 2017. Typically, FLSA violations have a two-year statute of limitations. 29 U.S.C. § 255(a). But the limitation period extends to three years if the violation is willful. *Id*. "Whether Defendant's alleged FLSA violations are 'willful' is a question better suited for a later stage of the litigation." *Rogers v. Webstaurant, Inc.*, No. 4:18-cv-74-JHM, 2018 WL 4620977, at \*4 (W.D. Ky. Sept. 26, 2018) (quotation omitted). Here, Plaintiffs assert that the parties entered into a tolling agreement on May 19, 2020, a claim Defendants do not dispute. [DN 128 at 2 n.4]. Plaintiffs' proposed three-year notice is therefore acceptable at this stage of litigation. But that "does not guarantee that each opt-in plaintiff's claims will be considered timely" when received. *See York*, 2021 WL 918768, at \*6. If Plaintiffs cannot prove willful FLSA violations, the statute of limitations will only extend back two years.

**of entry of this Order.**  If no agreement is reached, **within twenty (20) days of the date of entry of this Order, the parties shall file a joint report of their efforts specifically identifying areas of agreement and disagreement.**

The parameters identified in *Hall* should be a useful starting point for the parties to follow. *See Hall*, 2021 WL 231310, at *4–6; *see also Rogers v. Webstaurant, Inc.*, No. 4:18-cv-74-JHM, 2018 WL 4620977, at *4–8 (W.D. Ky. Sept. 26, 2018).  Although Plaintiffs' proposed notice is not as obviously deficient as the *Hall* notice, the Court expresses no opinion on its overall propriety.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Certification [DN 128] is **GRANTED** and Defendants' Motion to Hold Plaintiffs' Motion in Abeyance [DN 140] is **DENIED**.  The Court conditionally certifies an FLSA collective action of all individuals who worked as coal miners at the Dotiki, Warrior/Cardinal, and River View mines after May 19, 2017 and elect to opt into this action.  The parties are **HEREBY ORDERED** to meet and confer on the content and method of distribution of Plaintiffs' proposed notice in a manner consistent with the terms of this opinion.

Joseph H. McKinley Jr., Senior Judge
United States District Court

April 20, 2021

cc:     Counsel of record

13