UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:19-CV-00155-JHM

RANDY BRANSON, ET AL.                                                                                  PLAINTIFFS

V.

ALLIANCE COAL, LLC
WEBSTER COUNTY COAL, LLC
ALLIANCE RESOURCE PARTNERS, LP
ALLIANCE RESOURCE OPERATING PARTNERS, LP
WARRIOR COAL, LLC
RIVER VIEW COAL, LLC                                                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the parties' Joint Report Identifying Areas of Disagreement. [DN 172].

**I.   BACKGROUND**

In this Fair Labor Standards Act ("FLSA") collective action, current and former miners at three coal mines in western Kentucky sue the mines and the mines' parent companies to recover allegedly unpaid wages. [DN 23]. On April 20, 2021, this Court conditionally certified an FLSA collective action. *Branson v. Alliance Coal, LLC*, No. 4:19-cv-155-JHM, 2021 WL 1550571 (W.D. Ky. Apr. 20, 2021) [DN 167]. The only practical significance of this decision was that Plaintiffs' counsel could send court-authorized notice to prospective opt-in plaintiffs. *See Hall v. Gannett Co.*, No. 3:19-cv-296, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021) ("The point [of conditional certification] is to inform potential members of the collective action at the outset . . . ."). But the Court's oversight role in conditional certification also requires it to control the content and distribution of court-authorized notice. Thus, in its April 20 order, the

1

Court directed the parties to confer about the content and distribution of the notice. The Court would sort out remaining issues after that conference.

Now, the parties return. They report that they agree on the content of the notice and opt-in consent form but have several lingering disagreements about distribution of the notice. [DN 172]. Specifically, the parties dispute whether (1) Plaintiffs may distribute notice via email and text message, (2) Defendants must post notice at the mines, and (3) Plaintiffs can receive signatures electronically through DocuSign.

## II. STANDARD OF REVIEW

"The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010). The Court may supervise the notice process, but in doing so "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). To avoid any appearance of judicial endorsement, courts narrowly tailor notice to specific mediums, with prescribed language, and distributed only to the extent necessary to inform the putative collective. *See Tassy v. Lindsay Ent. Enters.*, No. 3:16-cv-77, 2017 WL 938326, at *5 (W.D. Ky. Mar. 9, 2017).

## III. ANALYSIS

### A. Distribution Methods

The parties mainly disagree about how to send notice to putative collective members. They agree that notice may be sent through first-class mail. But Plaintiffs also propose to send notice via email and, if Defendants lack an email address for a putative collective member, text message. [DN 172 at 3–4]. Plaintiffs also ask for posted notice at the three mines. [*Id*. at 5].

This district lacks a consistent standard for distribution of notice. *Compare Hall*, 2021 WL 231310, at *5 (mail and email distribution), *with York v. Velox Express, Inc.*, __ F. Supp. 3d __, No. 3:19-cv-92, 2021 WL 918768, at *9 (W.D. Ky. Mar. 10, 2021) (mail distribution for current employees and email distribution for former employees), *and Marcum v. Lakes Venture, LLC*, No. 3:19-cv-231, 2020 WL 6887930, at *4 (W.D. Ky. Nov. 24, 2020) (mail distribution only). *See also Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *4 (S.D. Ohio Feb. 26, 2015) ("[D]istrict courts across the country are split on the questions of whether it is appropriate to order disclosure of employees' email addresses, and whether notice should be sent to all potential opt-in plaintiffs via U.S. mail and email."). The undersigned has previously stated that "courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Rogers v. Webstaurant, Inc.*, No. 4:18-cv-74, 2019 WL 691408, at *2 (W.D. Ky. Feb. 19, 2019) (quoting *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). *But see Atkinson*, 2015 WL 853234, at *5 (noting a "current nationwide trend" toward dual notification through U.S. mail and email). Typically, U.S. mail is the single notification method. *See Askew v. Inter-Cont'l Hotels Grp.*, No. 5:19-cv-24, 2020 WL 6470183, at *4 (W.D. Ky. Nov. 3, 2020).

The Court begins from the assumption that U.S. mail is the most effective method to notify all potential opt-in plaintiffs. But here, the Court doubts whether U.S. mail alone will effectively reach all potential members of the collective. Plaintiffs rely on Defendants' employee records for the employees' mailing addresses. And courts have recognized that employer records for former employees are less likely to be current. *See York*, __ F. Supp. 3d at __, 2021 WL 918768, at *9. There appears to be a sizeable number of former employees in this litigation: one of the three defendant mines is permanently closed. [*See* DN 172 at 10].

Defendants' records for those miners are likely outdated.[1]  Some courts have responded to this situation by authorizing email notification for former employees only. *See York*, __ F. Supp. 3d at __, 2021 WL 918768, at *9.  But with the sheer number of potential former employees here, the Court prefers to err on the side of inclusivity and authorize email notification to all miners.  This conclusion is bolstered by Defendants' skepticism about whether their email database is complete.  [DN 172 at 10 (acknowledging Defendants do not provide email addresses to hourly miners)].  With potentially outdated mailing addresses and potentially incomplete email records, using both mail and email will more likely result in notification to the entire collective.  Finally, the ubiquity of email in recent years renders it a fair alternative to U.S. mail.  *See Hall*, 2021 WL 231310, at *5 (stating that it is "not particularly controversial" to distribute notice through U.S. mail and email, and "district courts routinely allow" notice through both methods).  The Court authorizes notification through U.S. mail and email.

The Court also authorizes the posting of notice at the three mines.  Courts in this district diverge on the propriety of posted notice.  *Compare Hall*, 2021 WL 231310, at *5 ("Plaintiffs may also post the notice at Gannett's call centers . . . ."), *with Tassy*, 2017 WL 938326, at *5 (denying posted notice).  But the prevailing trend in the Sixth Circuit is to "require[ ] employers to post the notice in a conspicuous place." *McGill v. Nashville Ventures*, No. 3:19-cv-922, 2020 WL 5983113, at *4 (M.D. Tenn. Oct. 8, 2020).  The Court will follow the prevailing trend here.[2]

The Court will not, however, authorize text message notification.  Plaintiffs ask to use text message notification as an alternative method to reach potential opt-in plaintiffs for whom

---

[1] The record indicates that some Dotiki miners transferred to other mines after the closure. [*See* DN 128-9 (declaration of miner stating he worked at the Warrior/Cardinal mine after the Dotiki mine closed)]. But not all miners transferred to other mines [*see* DN 128-7 (declaration of Greg Purdue)], and neither party provided evidence suggesting that most miners transferred to other mines.

[2] Plaintiffs' proposed stipulation, however, requests that "Defendants shall also cause the approved Notice to be posted at conspicuous locations at the Dotiki, Warrior/Cardinal and River View Mines." [DN 172-3 at 4, ¶ 3(c)]. The Court is under the impression the Dotiki mine closed in 2019. [*See* Amended Complaint, DN 23 at ¶ 1, n.2]. Unless circumstances have changed, the Court sees no benefit in ordering posted notice at a closed mine.

Defendants do not provide an email address. [*See* DN 172 at 4–5]. But text message is comparatively much more intrusive than U.S. mail or email. *See Hall*, 2021 WL 231310, at *5 (stating that text message notification is "more private and sensitive" than other forms of communication). Relying on an intrusive method like text messaging seems unnecessary when U.S. mail, email (where available), and posted notice seem likely to notify all prospective opt-in plaintiffs of this action.

The Court also will not require Defendants to produce the last four digits of employees' social security numbers.[3] It appears Plaintiffs request this information to "ensure the most up to date addresses can be obtained through public and/or proprietary data systems." [DN 172 at 3]. But even more so than text messages, social security numbers are extremely sensitive information. The Court is authorizing three communication methods that, considered together, should reasonably notify all potential opt-in plaintiffs without requiring the transfer of personal information. The Court sees no need to involve more intrusive types of information. *Accord York*, __ F. Supp. 3d __, 2021 WL 918768, at *9; *Hall*, 2021 WL 231310, at *5; *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2014 WL 2219236, at *4 (W.D. Ky. May 29, 2014).

**B. Signing Method: Electronic Signatures**

The parties' final dispute involves whether opt-in plaintiffs may sign the consent form electronically through an electronic signature service (e.g., DocuSign). Defendants challenge Plaintiffs' request for electronic signatures, suggesting that the three agreed-upon methods for returning the consent form (U.S. mail, email, and fax) are sufficient.

The law typically draws no distinction between handwritten and electronic signatures. *See, e.g.*, Ky. Rev. Stat. § 369.107(4) ("If a law requires a signature, an electronic signature

---

[3] Although the parties do not discuss the social security numbers in their Joint Report, the Court addresses this issue because Plaintiffs' proposed stipulation asks for the "last four digits of Social Security numbers." [DN 172-3 at 2, ¶ 3(a)].

5

satisfies the law."). Nor do most courts in this circuit. *See, e.g.*, *York*, __ F. Supp. 3d at __, 2021 WL 918768, at *10 (W.D. Ky. Mar. 10, 2021); *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2020 WL 3496150, at *8–9 (S.D. Ohio June 29, 2020); *Kilmer v. Burntwood Tavern Holdings, LLC*, 2020 WL 2043335, at *4–5 (N.D. Ohio Apr. 28, 2020); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-cv-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017).

The Court sees no issue with permitting opt-in plaintiffs to sign using an electronic signature service, especially because Plaintiffs will send notice partly through electronic methods. The prospective opt-in plaintiffs who receive notice through U.S. mail will receive a hard copy of the consent form—to opt in, a plaintiff only must sign and return the form. Everything can be accomplished via hard copy. Because opt-in plaintiffs who receive mail notice can reply via hard copy, it is only natural for prospective opt-in plaintiffs who receive email notice to sign the consent form electronically. It seems needlessly difficult to require those miners to convert their electronic notice into a hard copy consent form, especially those without a home printer.

Defendants argue that the three agreed-upon return methods suffice and a fourth method, even if electronic, is overkill. [DN 172 at 11]. But it is not clear why the Court should arbitrarily limit the methods by which opt-in plaintiffs return their consent forms. Courts limit the methods for *sending* notice to "avoid any appearance of judicial endorsement of the merits of the action." *Rogers*, 2019 WL 691408, at *2. Those concerns do not apply when considering the methods of *returning* notice.

Defendants also raise authenticity concerns with electronic signatures. The Court believes those concerns are overstated. This is not a situation where a court construes a typed document as a "signature," such as the "s/ NAME" format attorneys commonly use to "sign"

court filings. *Cf. Lambert v. Lowe's Home Ctrs., LLC*, No. 1:14-cv-107-JHM, 2016 WL 6123239, at *3–4 (W.D. Ky. Oct. 19, 2016). Opt-in plaintiffs using an electronic signature service actually sign their names. The only difference is that they sign on an electronic device rather than a sheet of paper. *See, e.g.*, *How does DocuSign work?*, DOCUSIGN (last viewed May 14, 2021), https://www.docusign.com/products/electronic-signature/how-docusign-works. Defendants cite examples from earlier filings in this case, where multiple plaintiffs electronically signed declarations from a single email address, to reiterate their concerns with electronic signatures. Reviewing Defendants' examples, however, it appears the multiple declarations came from family members sharing the same email account. Those same authenticity concerns arise with family members sharing the same home address. Further, if Defendants have concerns about the authenticity of an electronic signature after submission, Joint General Order 11-02 provides them with recourse: "A non-filing signatory or party who disputes the authenticity of an electronically filed document with a non-attorney signature, or the authenticity of the signature on that document . . . must file an objection to the document within fourteen (14) days of service of the document." Joint General Order 11-02, § 11(e).

## IV.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that

1) The Court approves the parties' agreed opt-in notice form [DN 172-2] for distribution;

2) The Court approves the parties' agreed opt-in consent form [DN 172-1];

3) The Court directs Defendants to deliver an electronic spreadsheet of the names, last known mailing addresses, last known email address (if any), and dates of employment of all potential FLSA collective members to Plaintiffs' counsel within fifteen (15) business days from the date of this order;

7

4) Within five (5) business days from its receipt of the information from Defendants, Plaintiffs' counsel shall disseminate the approved notice documents to all putative members of the collective via U.S. mail and email;

5) Within five (5) business days of providing the collective information to Plaintiffs' counsel, Defendants shall post the approved notice at conspicuous locations at the Warrior/Cardinal and River View mines;

6) The putative members of the collective have sixty (60) days from the date the notice is mailed to join the case by returning their written consent forms via U.S. mail, email, fax, or electronic signature service;

7) Opt-in consent forms will be deemed filed on the day they are stamped as received by Plaintiffs' counsel; Plaintiffs' counsel shall file in the record all received opt-in consent forms on a weekly basis, at minimum.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

May 18, 2021

cc: Counsel of Record