## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | |
|---|---|
| RANDY BRANSON, DANIEL CUNNINGHAM, ALTON JOSEPH NEWBERRY, FREDDIE BREWER, ANDREW JOHNSON, SHANE ALEXANDER, RICKEY CATES, BRIAN PRATER, ERIC THOMPSON, JACOB HOOD, WALTER RETTIG, BRODERICK HINKLE, and KORY LEEDY, on behalf of themselves and all others similarly situated, | CIVIL CASE<br><br>Case No. 4:19-CV-00155-RGJ-HBB<br><br>CLASS AND COLLECTIVE ACTION<br><br>DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| v. | |
| ALLIANCE COAL, LLC; ALLIANCE RESOURCE PARTNERS, L.P.; ALLIANCE RESOURCE OPERATING PARTNERS, L.P.; ALLIANCE RESOURCE MANAGEMENT GP, LLC; THOMAS WYNNE, LAYNE HERRING, WEBSTER COUNTY COAL, LLC; WARRIOR COAL, LLC; RIVER VIEW COAL, LLC; EXCEL MINING, LLC; MC MINING, LLC, SEBREE MINING, LLC; HOPKINS COUNTY COAL, LLC; HAMILTON COUNTY COAL, LLC; WHITE COUNTY COAL, LLC; GIBSON COUNTY COAL, LLC; METTIKI COAL WV, LLC; and TUNNEL RIDGE, LLC, | |
| Defendants. | |

## SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Randy Branson, Daniel Cunningham, Alton Joseph Newberry, Freddie Brewer,

Andrew Johnson, Shane Alexander, Rickey Cates, Brian Prater, Eric Thompson, Jacob Hood,

Walter Rettig, Broderick Hinkle, and Kory Leedy (collectively, "Plaintiffs") through their

undersigned counsel, individually, and on behalf of all persons similarly situated, file this Second

Amended Class and Collective Action Complaint ("Complaint"), against Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P.; Alliance Resource Operating Partners, L.P.; Alliance Resource Management GP, LLC; Webster County Coal, LLC; Warrior Coal, LLC; River View Coal, LLC; Excel Mining, LLC; MC Mining, LLC; Sebree Mining, LLC; Hopkins County Coal, LLC; Hamilton County Coal, LLC; White County Coal, LLC; Gibson County Coal, LLC; Mettiki Coal (WV), LLC; Tunnel Ridge, LLC; Thomas Wynne; and Layne Herring (collectively, "Defendants") (Defendants Alliance Coal, LLC; Alliance Resource Partners, L.P.; Alliance Resource Operating Partners, L.P.; and Alliance Resource Management GP, LLC; are collectively the "Parent Defendants") (Defendants Thomas Wynne and Layne Herring are together referred to as the "Individual Defendants") seeking all available remedies under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and Kentucky, Illinois, Indiana, and West Virginia state law. Plaintiffs assert their FLSA claims as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b) and state law claims as a class action under Federal Rule of Civil Procedure 23.[1]

With Defendants' consent solely as to the procedure by which this amended pleading is filed, and without any admission by Defendants as to any of the allegations contained herein, all of which Defendants expressly deny, and in connection with a settlement agreement the parties have executed through which a proposed Rule 23 class settlement shall be presented to the Court for approval, this amended pleading is filed pursuant to Fed. R. Civ. P. 15(a)(2), and it relates back to the date of the original pleading (Dkt. 1) pursuant to Fed. R. Civ. P. 15(c). The following factual allegations are based on personal knowledge as to Plaintiffs' own conduct and experience, and are

---

[1] Those state laws include: the Kentucky Wages and Hours Act, Ky. Rev. Stat. §§ 337.275, *et seq.* ("KWHA"); the Illinois Minimum Wage Law, 820 Ill. Comp. Stat § 105/4a(1) ("IMWL"); the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. § 115/4 ("IWPCA"); the Indiana Wage Payment Statute, Ind. Code §§ 22-2-5-1, *et seq.* ("IWPS") and West Virginia common law.

made on information and belief as to the acts of others.

## INTRODUCTION

1.     This action brought is on behalf of individuals who are current and former coal miners employed by Defendants, challenging Defendants' unlawful failure to pay for "off-the-clock work" in violation of the FLSA as well as Defendants' failure to pay all overtime, including by unlawfully excluding promised, non-discretionary bonuses in the calculation of the employees' "regular rate" for the purpose of determining the appropriate overtime rates of pay.

2.     Defendants operated as joint employers of Plaintiffs and other miners who worked in Defendants' mines in Kentucky, Illinois, Indiana, and West Virigina. Defendants' policies and practices deprived those miners of all pay that they are entitled to by law.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the claims of Plaintiffs and those similarly situated pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts.

5.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and/or conduct business in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this Judicial District.

## PARTIES

6.     Plaintiff Randy Branson worked as a coal miner in Defendants' Dotiki Mine operated by Webster County Coal, LLC in Webster County, Kentucky, from June 2006 to October 2019. Plaintiff Branson was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Dkt. 1-8.

3

7.      Plaintiff Daniel Cunningham worked from June 2015 to August 2019 as a coal miner in Defendants' Dotiki and Cardinal Mines operated by Webster County Coal, LLC and Warrior Coal, LLC in Webster County and Hopkins County, Kentucky, respectively. Plaintiff Cunningham was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Dkt. 14-1.

8.      Plaintiff Alton Joseph Newberry worked from April 2017 to July 2018 as a coal miner in Defendants' Dotiki and River View Mines operated by Webster County Coal, LLC and River View Coal, LLC in Webster County and Union County, Kentucky, respectively. Plaintiff Newberry was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Dkt. 23-13.

9.      Plaintiff Freddie Brewer worked as as a coal miner in Defendants' Excel Mine / MC Mining Complex operated by Excel Mining, LLC and MC Mining, LLC in Pike County, Kentucky, from approximately 2000 to December 2019. Plaintiff Brewer was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to be a plaintiff in this action. *See* Ex. A.[2]

10.     Plaintiff Andrew Johnson worked as a coal miner in Defendants' Sebree-Onton Complex operated by Sebree Mining, LLC in Webster County, Kentucky, from approximately 2012 to November 2015. He then transferred to Defendants' Hamilton Mine operated by Hamilton County Coal, in Hamilton County, Illinois, and worked there as a coal miner from approximately November 2015 to February 2016. Plaintiff Johnson was jointly employed by the Parent Defendants.

11.     Plaintiff Shane Alexander worked as a coal miner in Defendants' Elk Creek Mine

---

[2] Filed on March 27, 2020 in *Brewer v. Alliance Coal, LLC, et al.*, No. 7:20-cv-00041 (E.D. Ky.) (Dkt. 1-2).

operated by Hopkins County Coal, LLC in Hopkins County, Kentucky, from 2006 to April 2016. Plaintiff Alexander was jointly employed by the Parent Defendants.

12.    Plaintiff Rickey Cates was employed from approximately 2010 to February 2020 by Defendants as a coal miner in Defendants' Hamilton and Pattiki Mines operated by Hamilton County Coal, LLC and White County Coal, LLC in Hamilton County and White County, Illinois, respectively. Plaintiff Cates was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to be a plaintiff in this action. *See* Ex. B. [3]

13.    Plaintiff Brian Prater worked as a coal miner in Defendants' Gibson North and Gibson South Mines operated by Gibson County Coal, LLC in Gibson County, Indiana, from 2000 to April 2020. He was employed by Defendants at the Gibson North Mine from 2017 to 2018 and from 2018 to April 2020 at the Gibson South Mine. Plaintiff Prater was jointly employed by the Parent Defendants and the Individual Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Ex. C.[4]

14.    Plaintiff Eric Thompson worked as a coal miner in Defendants' Gibson North and Gibson South Mines operated by Gibson County Coal, LLC in Gibson County, Indiana, from 2006 to January 2020. Plaintiff Thompson was jointly employed by the Parent Defendants and the Individual Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Ex. D.[5]

15.    Plaintiff Jacob Hood worked as a coal miner in Defendants' Gibson South Mine operated by Gibson County Coal, LLC in Gibson County, Indiana, from 2018 to February 2020. Plaintiff Hood subsequently transferred to Defendants' River View Mine operated by River View

---

[3] Filed on April 9, 2021 in *Cates v. Alliance Coal, LLC, et al.*, No. 3:21-cv-00377 (S.D. Ill.) (Dkt. 1-1).

[4] Filed on April 13, 2021 in *Prater, et al. v. Alliance Coal, LLC, et al.*, No. 3:21-cv-00066 (S.D. Ind.) (Dkt. 3).

[5] Filed on May 9, 2022 in *Prater, et al. v. Alliance Coal, LLC, et al.*,. No. 3:21-cv-00066 (S.D. Ind.) (Dkt. 88-1).

Coal, LLC in Union County, Kentucky, where he worked as a coal miner from February 2020 to May 2020. In May 2020, due to COVID-19, he was on orders from the National Guard. Plaintiff Hood returned to work at the Gibson South Mine operated by Gibson County Coal, LLC on January 10, 2022. Defendants did not consider him a new hire at that time. Plaintiff Hood worked for at the Gibson South Mine until June 2023, when he left to go on active duty with the U.S. Army. Plaintiff Hood was jointly employed by the Parent Defendants and the Individual Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action, as it relates to his employment at Gibson County Coal, LLC. *See* Ex. E.[6]

16.    Plaintiff Walter Rettig worked as a coal miner in Defendants' Mettiki Mine operated by Mettiki Coal WV, LLC in Tucker County, West Virginia, from approximately February 2019 to August 2020. Plaintiff Rettig was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Ex. F.[7]

17.    Plaintiff Broderick Hinkle worked as a coal miner in the Defendants' Mettiki Mine operated by Mettiki Coal WV, LLC in Tucker County, West Virginia, from approximately August 2017 to January 2019. Plaintiff Hinkle was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Ex. G.[8]

18.    Plaintiff Kory Leedy worked as a coal miner in Defendants' Tunnel Ridge Mine operated by Tunnel Ridge, LLC near Wheeling, West Virginia, from 2011 to September 2020. Plaintiff Leedy was jointly employed by the Parent Defendants. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Ex. H.[9]

---

[6] Filed on July 1, 2022 in *Prater, et al. v. Alliance Coal, LLC, et al.*, No. 3:21-cv-00066 (S.D. Ind.) (Dkt. 114-1).
[7] Filed on April 6, 2021 in *Rettig, et al. v. Alliance Coal, LLC, et al.*, No. 2:21-cv-00008 (N.D. W. Va.) (Dkt. 1-3).
[8] Filed on April 6, 2021 in *Rettig, et al. v. Alliance Coal, LLC, et al.*, No. 2:21-cv-00008 (N.D. W. Va.) (Dkt. 1-2).
[9] Filed on July 21, 2022 in *Rettig, et al. v. Alliance Coal, LLC, et al.*, No. 2:21-cv-00008 (N.D. W. Va.) (Dkt. 112-1).

19.     Defendant Alliance Coal, LLC ("Alliance") is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

20.     Defendant Alliance Resource Partners, L.P. ("ARLP") is a for-profit limited partnership organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

21.     Defendant Alliance Resource Operating Partners, L.P. ("AROP") is a for-profit limited partnership organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

22.     Defendant Alliance Resource Management GP, LLC ("ARM") is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

23.     Defendant Webster County Coal, LLC ("Webster County Coal") operated the Dotiki Mine, an underground coal mine and preparation plant located in Webster County, Kentucky. Webster County Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

24.     Defendant Warrior Coal, LLC ("Warrior Coal") operates the Warrior Mine, an underground coal mine and preparation plant located in Hopkins County, Kentucky. Warrior Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

25.     Defendant River View Coal, LLC ("Rivew View Coal") operates the River View Mine, an underground coal mine and preparation plant located in Union County, Kentucky. River

View Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

26.    Defendant Excel Mining, LLC ("Excel Mining") operates the Excel Mine / MC Mining Complex, an underground coal mine and preparation plant located in Pike County, Kentucky. Excel Mining is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

27.    Defendant MC Mining, LLC ("MC Mining") operates the Excel Mine / MC Mining Complex, an underground coal mine and preparation plant located in Pike County, Kentucky. MC Mining is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

28.    Defendant Sebree Mining, LLC ("Sebree Mining") operated the Sebree-Onton Complex, an underground coal mine and preparation plant located in Webster County, Kentucky. Sebree Mining is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 South Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

29.    Defendant Hopkins County Coal, LLC ("Hopkins County Coal") operated the Elk Creek Mine, an underground coal mine and preparation plant located in Hopkins County, Kentucky. Hopkins County Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

30.    Defendant Hamilton County Coal, LLC ("Hamilton County Coal") operates the Hamilton Coal Mine, an underground coal mine and preparation plant located in Hamilton County,

Illinois. Hamilton County Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

31.     Defendant White County Coal, LLC ("White County Coal") operated the Pattiki Mine, an underground coal mine and preparation plant located in White County, Illinois. White County Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

32.     Defendant Gibson County Coal, LLC, ("Gibson County Coal") has operated the Gibson North and Gibson South Mines, which are underground coal mines and preparation plants. Until approximately January 2020, Gibson County Coal operated the Gibson North Mine, located near the city of Princeton, Indiana, and it presently operates the Gibson South Mine, located near the city of Owensville in Gibson County, Indiana. Gibson County Coal is a for-profit limited liability company organized under the state of Delaware, with its principal office located at 1717 S. Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

33.     Defendant Mettiki Coal (WV), LLC ("Mettiki Coal") operates the Mettiki Mine, an underground coal mine located in Tucker County, West Virginia. Mettiki Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 South Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

34.     Defendant Tunnel Ridge, LLC ("Tunnel Ridge") operates the Tunnel Ridge Mine, an underground coal mine and preparation plant located near Wheeling, West Virginia. Tunnel Ridge is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal office located at 1717 South Boulder Avenue, Ste. 400, Tulsa, Oklahoma.

35.     Defendant Thomas Wynne is the current Senior Vice President and Chief Operating

9

Officer of Alliance and ARLP, among others. He has served in this position since his promotion in 2009 from Vice President of Operations. As Senior Vice President and Chief Operating Officer, Mr. Wynne has had, at all relevant times, the responsibility of directing the day-to-day operations for the Alliance Mines.[10]

36.    Upon information and belief, Defendant Wynne at all relevant times, supervised and had authority and power to control wages and hours, and to hire and fire coal miners at the Alliance Mines. Defendant Wynne was aware of, implemented, and enforced the policies and practices complained of herein. He was involved in decisions pertaining to employees' compensation; and had a material role in the compensation practices, decisions, policies, and actions, including but not limited to those complained of herein.

37.    Defendant Layne Herring serves as the Vice President of Compensation & Payroll for Alliance and ARLP, among others. As Vice President of Compensation & Payroll Mr. Herring's responsibilities include the administration of payroll records for the coal miners at the Alliance Mines.

38.    Upon information and belief, Defendant Herring at all relevant times, supervised and had authority and power for the timekeeping and payroll for the coal miners at the Alliance Mines. Defendant Herring was aware of, implemented, and enforced the policies and practices complained of herein. He was involved in decisions pertaining to employees' compensation; and had a material role in the compensation practices, decisions, policies and actions, including but not limited to those complained of herein.

39.    Defendants Webster County Coal, Warrior Coal, River View Coal, Excel Mining,

---

[10] The Dotiki Mine, Warrior Mine, River View Mine, Excel/MC Mining Complex, Sebree-Onton Complex, Elk Creek Mine, Hamilton Mine, Pattiki Mine, Gibson North Mine, Gibson South Mine, Mettiki Mine, and Tunnel Ridge Mine are together referred to as the "Alliance Mines." As addressed separately in the text, each Alliance Mine is operated by a Subsidiary Defendant, and each Subsidiary Defendant is a subsidiary of Defendant Alliance Coal, LLC.

MC Mining, Sebree Mining, Hopkins County Coal, Hamilton County Coal, White County Coal, Gibson County Coal, Mettiki Coal, and Tunnel Ridge are together referred to as the "Subsidiary Defendants."

40.    Upon information and belief, the Subsidiary Defendants are each wholly-owned subsidiaries of Alliance (which is in turn a subsidiary, directly or indirectly, of the other Parent Defendants). The Subsidiary Defendants' employment policies and procedures, described below, are uniformly established and directed by the Parent Defendants and the Individual Defendants.

41.    Upon information and belief, each Parent Defendant and Individual Defendant exerted and exerts supervisory control over Plaintiffs and similarly situated coal miners, and was and is involved in the daily operations of the Alliance Mines as it pertains to the policies and procedures for the compensation of all such employees.

42.    At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA.

43.    Defendants' employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce.

44.    Each Defendants' annual gross volume of sales made or business done exceeds $500,000.

45.    The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, including as alter egos of one another, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

46.    During all times relevant, Plaintiffs were employees of Defendants and are covered by the FLSA.

11

47.     During all times relevant, Defendants are employers and/or enterprises covered by the FLSA.

## CLASS AND COLLECTIVE DEFINITIONS

48.     Plaintiffs Randy Branson, Daniel Cunningham, and Alton Joseph Newberry bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Webster County Coal, LLC, River View Coal, LLC and/or Warrior Coal, LLC between November 4, 2016 and April 22, 2024 (the "Branson FLSA Collective").

49.     Plaintiff Freddie Brewer brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following collective:

> All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Excel Mining, LLC and/or MC Mining, LLC between March 27, 2017 and April 22, 2024 (the "Brewer FLSA Collective").

50.     Plaintiff Rickey Cates brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following collective:

> All current and former non-exempt employees who performed work in the State of Illinois in underground mines or surface coal preparation plants owned or operated by Hamilton County Coal, LLC or White County Coal, LLC between April 9, 2019 and April 22, 2024 (the "Cates FLSA Collective").

51.     Plaintiffs Brian Prater, Eric Thompson, and Jacob Hood bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees who performed work in the State of Indiana in underground mines or surface coal preparation plants at the Gibson North and Gibson South mines, and who were employed by Gibson County Coal, LLC between April 13, 2018 and April 22, 2024 (the "Prater FLSA Collective").

52.     Plaintiffs Walter Rettig, Broderick Hinkle, and Kory Leedy bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees who performed work in the State of West Virginia in underground mines or surface coal preparation plants owned or operated by Tunnel Ridge, LLC or Mettiki Coal (WV), LLC between April 1, 2021 and April 22, 2024, in addition to all parties who previously filed a consent to join *Rettig, et al. v. Alliance Coal, LLC, et al.*, No. 2:21-cv-00008 (N.D. W. Va.) (the "Rettig FLSA Collective").

53.     Count I of this lawsuit is brought against all Defendants with the exception of Defendants Sebree Mining and Hopkins County Coal.

54.     Plaintiffs Randy Branson, Daniel Cunningham, Alton Joseph Newberry, Freddie Brewer, Rickey Cates, Brian Prater, Eric Thompson, Jacob Hood, Walter Rettig, Broderick Hinkle, and Kory Leedy are referred to herein as the "FLSA Plaintiffs."

55.     The Branson FLSA Collective, Brewer FLSA Collective, Cates FLSA Collective, Prater FLSA Collective, and Rettig FLSA Collective are together referred to as the "Alliance Collective" and the members of the Alliance Collective are "Alliance Collective Members."

56.     Plaintiffs Randy Branson, Daniel Cunningham, Alton Joseph Newberry bring Count II of this lawsuit (for violation of the KWHA) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Webster County Coal, LLC, River View Coal, LLC and/or Warrior Coal, LLC between November 4, 2014 and April 22, 2024 (the "Branson Class").

57.     Plaintiff Freddie Brewer brings Count II of this lawsuit (for violation of the KWHA) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

13

> All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Excel Mining, LLC and/or MC Mining, LLC between March 27, 2015 and April 22, 2024 (the "Brewer Class").

58. Plaintiffs Andrew Johnson and Shane Alexander bring Count II of this lawsuit (for violation of the KWHA) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All current and former non-exempt employees who performed work in the State of Kentucky in underground mines or surface coal preparation plants owned or operated by Sebree Mining, LLC or Hopkins County Coal, LLC between June 24, 2015 and April 22, 2024 (the "Johnson Class").

59. Count II of this lawsuit is brought against the Parents Defendants and Defendants Webster County Coal, River View Coal, Warrior Coal, Excel Mining, MC Mining, Sebree Mining and Hopkins County Coal.

60. The Branson Class, Brewer Class, and Johnson Class are together referred to as the "Kentucky Classes" and the members of the Kentucky Classes are "Kentucky Class Members."

61. Plaintiff Rickey Cates brings Counts III and IV of this lawsuit (for violation of the IMWL and IWPCA) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former non-exempt employees who performed work in the State of Illinois in underground mines or surface coal preparation plants owned or operated by Hamilton County Coal, LLC or White County Coal, LLC between April 9, 2011 and April 22, 2024 (the "Illinois Class").

62. Counts III and IV of this lawsuit is brought against the Parents Defendants and Defendants Hamilton County Coal and White County Coal.

63. Plaintiffs Eric Thompson and Jacob Hood bring Count V of this lawsuit (for violation of the IWPS) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All current and former non-exempt employees who performed work in the State of Indiana in underground mines or surface coal preparation plants at the Gibson North and Gibson South mines, and who were employed by Gibson County Coal, LLC between April 13, 2018 and April 22, 2024 (the "Indiana Class").

64. Count V of this lawsuit is brought against the Parents Defendants, Individual Defendants, and Defendant Gibson County Coal.

65. Plaintiffs bring Count VI of this lawsuit (for unjust enrichment) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All current and former non-exempt hourly employees who performed work in the United States in the Alliance Mines, including the underground mines and surface coal preparation plants, during the applicable limitations period (the "Unjust Enrichment Class").

66. Count VI of this lawsuit is brought against all Defendants.

67. The Kentucky Classes, Illinois Class, and Indiana Class are together referred to as the "Alliance Classes" and members of the Alliance Classes are "Alliance Class Members."

68. The Alliance Collective, the Alliance Classes, and the Unjust Enrichment Class are together referred to as the "Alliance Collective and Class" and the members of the Alliance Collective and Class are "Alliance Collective and Class Members" or "Coal Miners."

69. Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter, as may be warranted or necessary.

## **STATEMENT OF FACTS**

**A.    Defendants' Mining Operations and Operational Structure**

70. The Parent and Subsidiary Defendants comprise and hold themselves out to be the single entity, Alliance, "the largest coal producer in the Eastern U.S."[11]

71. The Parent Defendants operate seven underground mining complexes in West

---

[11] https://www.arlp.com/our-businesses/coal-operations/ (last visited Apr. 5, 2024).

Virginia, Illinois, Indiana, and Kentucky. These operations include the Alliance Mines.

72.    ALRP represents that it "operate[s] seven mining complexes in two operating regions: Appalachia and Illinois Basin,"[12] and "market[s] [its] oil & gas mineral interests for lease to major operators in those regions and generate[s] royalty income from the leasing and development of those mineral interests, and generate[s] coal royalty income from mineral resources we own and lease to our coal mining operations."[13]

73.    Sales of coal that the Alliance Mines produce is controlled by the Parent Defendants. The Parent Defendants contract for each of the Subsidiary Defendant's coal sales. Proceeds from the sales are deposited into accounts that the Parent Defendants control.

74.    For example, according to ARLP's financial and operating results for year ended December 31, 2021, ARLP's coal sales increased in all regions compared to both the year 2020 and the sequential quarters in 2020. Higher export sales during 4Q2021 drove coal sales volumes higher by 15.3% and 7.2% in the Illinois Basin and Appalachian regions, respectively, compared to 4Q2020. Compared to 4Q2020, Illinois Basin coal sales volumes increased 10.1% in 4Q2021 primarily as a result of increased production at the River View, Warrior and Gibson South Mines. Reflecting the spike in coal prices ARLP secured in 2021, coal sales price per ton sold increased by 6.0% in both the Illinois Basin and Appalachian regions in 4Q2021 compared to 4Q2020. Coal sales prices in the Illinois Basin increased by 10.0% in 4Q2021 compared to 4Q2020 due to improved price realizations at the Gibson South, Hamilton and River View Mines.

75.    Parent Defendants operations are interrelated and share common management, which includes without limitation the Individual Defendants.

76.    Joseph W. Craft III has served as the the President, Chief Executive Officer and a

---

[12] https://www.arlp.com/our-businesses/coal-operations/ (last visited Apr. 5, 2024).
[13] https://www.arlp.com/our-businesses/royalties/ (last visited Apr. 5, 2024).

Director of Alliance since August 1999 and Chairman of the Board of Directors since January 1, 2019. Mr. Craft also serves as ARM's and ARLP's Chairman, President and Chief Executive Officer. Additionally, Mr. Craft serves as President, Chief Executive Officer and Chairman of the Board of Directors of Alliance GP, LLC, the general partner of Alliance Holdings GP, L.P.

77.    According to ARLP's annual report on Form 10-K, which was filed with the U.S. Securities and Exchange Commission on February 20, 2020, Defendant ARLP owns 98.9899% of the interest in Defendant AROP, which in turns owns 99.999% of the interest in Defendant Alliance.

78.    The chain of control among the various entities is depicted below:

The following diagram depicts our simplified organization and ownership as of December 31, 2022:

79.    Defendants' elaborate corporate structure, as depicted above, with multiple levels of separately registered subsidiaries, all with shared officers and managements, merely serves as a device intended to limit the Parent Defendants' liability.

80.     Each of the Parent Defendants are joint employers of the Coal Miners, as Defendants' operations are interrelated and share common management. While the Subsidiary Defendants purport to operate the Alliance Mines, the Parent Defendants (Alliance, AROP, ARM, and ARLP) control every significant aspect of their the subsidiaries' coal mining operations.

81.     During all times relevant, the Parent Defendants maintained operational control over the day-to-day functions of Plaintiffs and the Coal Miners.

82.     In particular, the Parent Defendants jointly controlled and directed the employment policies and practices, including the unlawful pay practices of the Subsidiary Defendants, by directing such subsidiaries to follow the uniform time-keeping and pay practices of the Parent Defendants, which the Parents Defendants applied uniformly to all of the Subsidiary Defendants and their employees. Accordingly, each Parent Defendant was a joint employer of the Coal Miners who worked at the Alliance Mines.

83.     Among other things, the Parent Defendants required the Subsidiary Defedants to use the Parent Defendants' proprietary time-keeping hardware and software system developed by another ARLP subsidiary, Matrix Design Group, LLC ("Matrix"), as the exclusive means for the subsidiaries to record the time worked and to determine the times periods for which these subsidiaries would pay for work performed by their employees.

84.     The Parent Defendants are joint employers as: (1) each Subsidiary Defendant installed the same tracking system and time-keeping system provided by Matrix; (2) each Subsidiary Defendant chose, in the same way, to willfully ignore the data generated by that system regarding work performed prior to the scheduled beginning of shifts and instead pay workers only from the scheduled beginning of the shifts; (3) the data available to each Subsidiary Defendant were also available to Parent Defendants.

18

85.     In addition to exercising authority to hire, fire, discipline, and otherwise exercise payroll, scheduling and human-resources-related control over the Subsidiary Defendant, the Parent Defendants also exercised control over the pay rates and insurance benefits provided by the Subsidiary Defendant to its nominal employees.

86.     The Parent Defendants also supervised the actual work performed by the nominal employees of the Subsidiary Defendant. For instance, the Subsidiary Defendants receive directions from the Parent Defendants regarding how their workers should perform mining operations and in what direction workers should mine for coal.

87.     Upon information and belief, the Parent Defendants expressly supervise and control the policies and practices used by the Subsidiary Defendants to pay Plaintiffs and Coal Miners.

88.     The foregoing allegations demonstrate that the Defendants collectively operate as a single entity that is wholly controlled by the Parent Defendants.

89.     ARLP, in its public filings and on its website, holds out itself and its subsidiaries as one integrated entity. Moreover, the Parent Defendants manage and control the Subsidiary Defendants' supervisors and operate the Alliance Mines as mere instrumentalities of their own enterprise.

90.     The Parent Defendants commingled Alliance's bank accounts and funds. Upon information and belief, the Subsidiary Defendants do not have an accounting department nor do they maintain individual bank accounts. Rather, the Parent Defendants maintain the bank accounts for the Subsidiary Defendants. The Parent Defendants borrow money from lending institutions that the Subsidiary Defendants then use to fund their local operations.

91.     The Subsidiary Defendants do not control payroll for the Coal Miners. Rather, timekeeping and payment practices is controlled by the Parent Defendants. The Parent Defendants

19

determine pay raises for all personnel at the mines, including Coal Miners. Similarly, staffing levels, including the decision whether to lay-off employees at the mines, is determined by the Parent Defendants. All personnel actions, including, but not limited to, new hires, job change, pay change, or termination, are approved by the Parent Defendants. The Parent Defendants maintain electronic payroll records in their Tulsa office.

**B.    The Work Performed by Plaintiffs and Coal Miners**

92.    Plaintiffs worked as Coal Miners in the Alliance Mines.

93.    Plaintiffs and other Coal Miners are not members of a union.

94.    Plaintiffs and Coal Miners have worked long hours on day and night shifts to keep Defendants' mines operating, and in order for Defendants to maximize their profits. Plaintiffs typically worked five ten-hour shifts per week and were frequently required to work weekends.

95.    The work that Plaintiffs and other Coal Miners perform is, by its nature, inherently hazardous and dangerous.

96.    The Supreme Court of the United States has long recognized the special difficulties involved in the job of mining coal as follows:

> Those who are forced to travel in underground mines in order to earn their livelihood ... must journey beneath the crust of the earth, far removed from the fresh and open air and from the beneficial rays of the sun. … A heavy toll is exacted from those whose lot it is to ride and walk and mine beneath the surface. From the moment they enter the portal until they leave they are subjected to constant hazards and dangers; they are left begrimed and exhausted by their continuous physical and mental exertion.

*Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 162 (1945).

97.    In their work for Defendants, Plaintiffs and Coal Miners routinely worked more than forty hours in a workweek.

20

98.    Plaintiffs and Coal Miners were paid on an hourly basis at an agreed hourly rate, and in addition were entitled to be paid and were paid various types of bonuses.

99.    Plaintiffs and Coal Miners have not been paid for all of the time that they spend performing work, including work performed both before and after their regularly scheduled shifts.

100.    Defendants required Plaintiffs and Coal Miners to arrive for their work shifts sufficiently early to have time to don protective gear and be dressed and ready prior to the beginning of their shifts, as well as to retrieve other equipment and supplies, consult with supervisors, and attend safety meetings prior to the beginning of their shifts.

101.    Upon information and belief, Plaintiffs and Coal Miners were directed, via in writing by the handbooks and work rules they were provided or by postings at the mine and/or orally by their supervisors, that they had to be dressed and ready at least fifteen minutes prior to their shift start time. In addition, pursuant to Defendants' policy, Plaintiffs and Coal Miners were instructed that protective gear and tools that were required to be used on a daily basis were not to be removed from the premises of Defendants' mine locations.

102.    Defendants did not pay Plaintiffs and Coal Miners for the time spent working prior to beginning of their scheduled shift or for safety meetings. Instead, Defendants began paying Plaintiffs and Coal Miners for work beginning at the start time of their scheduled shift.

103.    During the time that Plaintiffs and Coal Miners were required to be present at an Alliance Mine prior to the beginning of their scheduled shift, Plaintiffs and Coal Miners routinely performed a variety of activities that constituted compensable work, including for example:

    a.    Retrieving specialized protective gear and clothing from lockers and/or baskkets located at the mine's above-ground bathhouse;

    b.    Donning, inspecting, calibrating, and charging/removing from charge specialized protective equipment and clothing issued by the Defendants and required for the dangerous environment of an underground coal mine, including coveralls, boots, helmet, lamp, reflective gear, work belt, self-

rescuer, proximity box, multi-gas detector, text-pager, tracking device, hearing protection, safety glasses, respirator, and gloves; Defendants were required by law to ensure that the Coal Miners donned, charged, calibrated, and inspected certain of this equipment;

c.   Gathering tools to be used during scheduled shift from an above-ground storeroom; and

d.   Gathering materials to be used during scheduled shift also from an above-ground storeroom.

104.   In addition, at the end of each shift, Plaintiffs and Coal Miners were required to perform the time-consuming task of doffing their specialized protective equipment, cleaning their boots, returning tools and supplies to the appropriate location, returning their gear to their lockers, and readying equipment for use on future shifts (including placing safety equipment required by law on charge and/or turning it in to other employees for charging and/or calibration). This work took a substantial amount of time.

105.   Defendants did not pay Plaintiffs and Coal Miners for their post-shift work activities. Instead, Defendants stopped paying Plaintiffs and the Coal Miners at the time they came above-ground and did not pay them for doffing their specialized protective equipment or any other work after they exited the mine.

106.   All of the pre-shift and post-shift work performed were integral and indispensable parts of the principal work activities of Plaintiffs and Coal Miners.

107.   Defendants were aware that Plaintiffs and Coal Miners performed this work before and after their shift, because they required these activities to be performed and because they employed and had the ability to use sophisticated technology that provided detailed information to Defendants about the times that each employee reported to work prior to the scheduled start time for their shifts and performed work off the clock.

108.   Specifically, Defendants installed "tracker" devices to each miner's helmet. These devices are capable of tracking and recording the exact location of each miner, and Defendants

22

required the helmets to be worn by the miner at all times in the workplace. The tracking system is not merely capable of recording the current location of each miner's tracker device, but also is capable of recording and preserving in Defendants' data systems the exact time each miner moves to a new location.

109.    Although Defendants' system was capable of automatically recording the exact time when Plaintiffs and the Coal Miners would arrive at the facility to begin work, Defendants did not utilize that time for purposes of timekeeping and paying Plaintiffs and other Coal Miners for the work they performed.

110.    Defendants failed to pay any Coal Miners for their time expended in compensable activities prior to the scheduled beginning of the shift. Instead, Defendants only paid Plaintiffs and other Coal Miners from the time that their shift was scheduled to begin and stopped paying those workers when they exited the mine.

**C.    Defendants Did Not Pay the Proper Overtime Rate to Plaintiffs and Coal Miners**

111.    In addition to not paying Plaintiffs and the Coal Miners for time spent working before and after their shifts, Defendants also failed to pay Plaintiffs and the Coal Miners the appropriate overtime rate of compensation for overtime work performed.

112.    Plaintiffs and the Coal Miners were paid several forms of bonus compensation that were not discretionary, and therefore, should have been included in their "regular rate" of compensation for determining their overtime rate of compensation.

113.    Upon information and belief, Defendants provided their employees a "Benefits Handbook," which described certain bonus compensation to which Plaintiffs and the Coal Miners would be entitled as part of their compensation for their work for Defendants.

114.    Non-discretionary bonuses included, among others:

23

a.    an annual Attendance Incentive Bonus;

b.    a New Electrical Certification Bonus;

c.    a New Mine Foreman Certification Bonus;

d.    an annual Emergency Medical Technician Certification Bonus;

e.    an annual Mine Emergency Technician Certification Bonus;

f.    an annual seniority days bonus starting at each employee's sixth year of service, giving a bonus of one "day" or eight hours of regular pay in the first year of eligibility, and with an additional 8 hours of pay accruing each year (with the maximum accrual being 20 days);

g.    a Weekly Production Bonus based on productivity and man hours, using a formula that took into account the amount of coal mined during the week in the mine in question, the percentage of the coal mined which was "clean," the number of employee hours expended to mine the coal, and similar objectively-quantifiable facts; and

h.    a Safety Incentive Bonus that was calculated based on a formula derived from objective data.

115.    Defendants paid these bonuses to Plaintiffs and the Coal Miners, but Defendants failed to include certain of such bonuses in the "regular rate" used to calculate the overtime rate of pay for Plaintiffs and the Coal Miners in the weeks that the bonuses were paid. Defendants' failure resulted in Plaintiffs and the Coal Miners receiving lower overtime rates than they were owed for the weeks in which the bonuses were paid.

116.    These bonuses should have been included in calculating employees' overtime rates of pay.

117.    Additionally, the Plaintiffs and the Coal Miners were not compensated for the full amount of overtime that they were owed each week, because, upon information and belief, Defendants included a type of implicit overtime premium it referred to as the "boosted hours method" in the formula used to calculate two types of bonuses (production and safety bonuses), but this formula did not compensate Plaintiffs and the Coal Miners for the full overtime premium owed because the number of hours used by Defendants in the "boosted hours" formula was based

24

on the number of hours Defendants credited the employees with working and therefore did not include all time worked as described above.

118.    Defendants knew or should have known that the work that they required of Plaintiffs and other Coal Miners should have been paid for all time worked before and after their regularly scheduled shift under the FLSA.

119.    Defendants knew or should have known that the non-discretionary bonuses that they paid should have been properly incorporated into the regular rate for purposes of calculating overtime compensation under the FLSA.

120.    The Parent and Subsidiary Defendants are sophisticated national businesses with access to knowledgeable human resource specialists and competent counsel.

121.    Defendants do not maintain accurate records of the actual hours that Plaintiffs and Coal Miners worked each workday and the total hours worked each workweek.

122.    Defendants have acted willfully and with reckless disregard of clearly applicable FLSA and state law wage and hour provisions by failing to compensate Plaintiffs and Coal Members for all hours worked in excess of forty (40) during the workweeks.

**D. The Off-the-Clock Work Results in Viable Gap Time Claims in Weeks When the Coal Miners Worked Less Than Forty Hours**

123.    "Gap time" refers to the hours that fall between a nonexempt employee's regularly scheduled hours and the 40 hours that an employee must work before becoming entitled to overtime pay. When an employee is scheduled to work 40 hours per week, there is no gap time. But for employees working fewer than 40 hours – 37.5 hours per week, for example – gap time is time worked between 37.5 and 40 hours.

124.    Plaintiffs and other Coal Miners sometimes worked less than forty (40) hours in a workweek. In such workweeks, the off-the-clock work described herein constitutes unpaid gap

time, for which Plaintiffs and the Coal Miners are entitled to be paid at their regular hourly rates of pay.

## COLLECTIVE ACTION ALLEGATIONS

125.    The FLSA Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the Alliance Collective defined above.

126.    FLSA Plaintiffs desire to pursue this FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

127.    FLSA Plaintiffs and the Alliance Collective Members are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to the Defendants' previously described common pay and timekeeping practices and, as a result of such practices, were not paid the full and legally mandated wage for the overtime hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping, and payroll practices.

128.    The Alliance Collective Members have the same or closely similar job duties as the FLSA Plaintiffs, and FLSA Plaintiffs and all Alliance Collective Members were paid by Defendants in the same manner, in violation of the FLSA. Accordingly, the named FLSA Plaintiffs are similarly situated to all Alliance Collective Members.

129.    FLSA Plaintiffs and the Alliance Collective Members performed the same type of work, the manner and terms of which were controlled by the Defendants, and were not paid for all time worked or at the proper overtime rate as required by federal law.

130.    The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records. Defendants employ many Alliance Collective Members throughout Kentucky, Illinois, Indiana, and West Virginia. These similarly situated

employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

131.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves, the Alliance Classes, and the Unjust Enrichment Class.

132.    The members of each Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 50 members in each Class.

133.    Defendants engaged in the same conduct toward Plaintiffs, the other members of the Alliance Classes, and the Unjust Enrichment Class.

134.    The injuries and damages to each Class present questions of law and fact that are common to each member within such Class, and that are common to each Class as a whole.

135.    Plaintiffs will fairly and adequately represent and protect the interests of the Alliance Classes and Unjust Enrichment Class. There is no conflict between the claims of Plaintiffs and those of the Alliance Classes and Unjust Enrichment Class.

136.    Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

137.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact predominate over any individual questions in this matter. The common issue of facts and law, include but are not limited to: (1) whether Defendants paid the members of the Alliance Classes and the Unjust Enrichment Class for all time worked; and (2) whether Defedants failed to pay those workers the full amount of overtime compensation earned.

138. Plaintiffs' claims are typical of the claims of the respective Alliance Classses to which they belong. Those Plaintiffs' claims are typical of the claims of the Alliance Classes in the following ways, without limitation: (a) Plaintiffs are members of the Alliance Classes; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Alliance Classes; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Alliance Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Alliance Classs Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Alliance Class Members.

139. Plaintiffs' claims are typical of the claims of the Unjust Enrichment Class in the following ways, without limitation: (a) Plaintiffs are members of the Unjust Enrichment Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Unjust Enrichment Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Unjust Enrichment Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Unjust Enrichment Class members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Unjust Enrichment Class members.

140. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Alliance Classses and the Unjust Enrichment

Class are readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the Alliance Classes and the Unjust Enrichment Class would create the risk of inconsistent or varying adjudications with respect to the individual members in each Class that would establish incompatible standards of conduct for Defendants.

141.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Alliance Class Members and the Unjust Enrichment Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

142.    Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA - Overtime**
**(On Behalf of the FLSA Plaintiffs and the Alliance Collective)**

143.    All previous paragraphs are incorporated as though fully set forth herein.

144.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he or she is employed. *See* 29 U.S.C. § 207(a)(1).

145.    The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee…." 29 U.S.C. § 207(e).

146.    With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

147.    Each Parent Defendant is subject to the wage requirements of the FLSA because each of the Parent Defendants is an "employer" under 29 U.S.C. § 203(d).

148.    Defendant Warrior Coal is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

149.    Defendant River View Coal is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

150.    Defendant Excel Mining is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

151.    Defendant MC Mining is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

152.    Defendant Hamilton County Coal is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

153.    Defendant White County Coal is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

154.    Defendant Gibson County Coal is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

155.    Defendant Mettiki Coal WV is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

156.    Defendant Tunnel Ridge is subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

157.    At all relevant times, each of the Defendants was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

158.    During all times relevant, the FLSA Plaintiffs and Alliance Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

159.    The FLSA Plaintiffs and Alliance Collective Members are not exempt from the requirements of the FLSA.

30

160.    The FLSA Plaintiffs and Alliance Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

161.    Defendants' compensation scheme applicable to the FLSA Plaintiffs and Alliance Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

162.    Defendants knowingly failed to compensate the FLSA Plaintiffs and Alliance Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112. More specifically, Defendants have failed to include non-discretionary bonuses in calculating the the FLSA Plaintiffs' and Alliance Collective Members' "regular rate" for the purpose of calculating the applicable time-and-a-half overtime premium, and Defendants have failed to compensate the FLSA Plaintiffs and Alliance Collective Members for off-the-clock work.

163.    Defendants failed to create, keep, and preserve records with respect to work performed by the FLSA Plaintiffs and the Alliance Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

164.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II
### Violation of the KWHA – Nonpayment of Wages
### (On behalf of the Kentucky Plaintiffs and Kentucky Classes)

165.    All previous paragraphs are incorporated as though fully set forth herein.

166.    Plaintiffs Branson, Cunningham, Newberry, Brewer, Johnson, and Alexander

31

("Kentucky Plaintiffs") bring this claim on behalf of all the members of the proposed Kentucky Classses.

167.    Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* Ky. Rev. Stat. §§ 337.275, *et seq.*

168.    Kentucky state law also requires that employees receive overtime compensation "not less than one and one-half (1½) times" the employee's regular rate of pay for all hours worked over forty in one workweek. Ky. Rev. Stat. § 337.285. *See also* 803 Ky. Admin. Regs. 1:060.

169.    During all relevant times, each Parent Defendant and Individual Defendant was each a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

170.    During all relevant times, Webster County Coal was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

171.    During all relevant times, Warrior Coal was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

172.    During all relevant times, River View Coal was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

173.    During all relevant times, Excel Mining was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

174.    During all relevant times, MC Mining was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

175.    During all relevant times, Sebree Mining was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

176.    During all relevant times, Hopkins County Coal was a covered employer required to comply with Ky. Rev. Stat. § 337.010(1)(d).

177.    During all relevant times, the Kentucky Plaintiffs and Kentucky Classes were covered employees entitled to the protections of the KWHA. *See* Ky. Rev. Stat. § 337.010(1)(e).

178.    Kentucky Plaintiffs and Kentucky Class Members are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. *See* Ky. Rev. Stat. § 337.285(2).

179.    Defendants have violated the KWHA with respect to the Kentucky Plaintiffs and the Kentucky Classes by, *inter alia*, failing to compensate them for all hours worked at their normal hourly rate (for time worked under forty (40) hours per week) and at one and one-half their "regular rate" for all hours worked in a workweek in excess of forty hours.

180.    In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

181.    Defendants must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages, because they failed to pay employees the required amount of wages and overtime at the statutory rate. Ky. Rev. Stat. § 337.385

182.    The Kentucky Plaintiffs and Kentucky Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended. Ky. Rev. Stat. § 337.385.

**COUNT III**
**Violation of the Illinois Minimum Wage Law**
**(On Behalf of Plaintiff Cates and the Illinois Class)**

183.    All previous paragraphs are incorporated as though fully set forth herein.

184.    The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat

33

§ 105/4a(1).

185.    Each Parent Defendant and Individual Defendant is subject to the IMWL's overtime requirements because each is an employer under 820 Ill. Comp. Stat § 105/3(c).

186.    Defendant Hamilton County Coal is subject to the IMWL's overtime requirements because Defendant Hamilton County Coal is an employer under 820 Ill. Comp. Stat § 105/3(c).

187.    Defendant White County Coal is subject to the IMWL's overtime requirements because Defendant White County Coal is an employer under 820 Ill. Comp. Stat § 105/3(c).

188.    During all relevant times, Plaintiff Cates and the Illinois Class were covered employees entitled to the above-described IMWL protections. *See* 820 Ill. Comp. Stat. § 105/3(d).

189.    Plaintiff Cates and the Illinois Class are not exempt from the IMWL.

190.    Plaintiff Cates and the Illinois Class routinely worked in excess of forty (40) hours per week.

191.    Defendants' compensation policies and practices applicable to Plaintiff Cates and the Illinois Class are in violation of the IMWL. *See* 820 ILCS § 115/1 *et seq*.

192.    Defendants' failure to pay compensation due to Plaintiff Cates and the Illinois Class has been willful and/or in bad faith.

193.    Defendants knowingly failed to compensate Plaintiff Cates and the Illinois Class for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. *See* 820 Ill. Comp. Stat. § 105/4a(1).

194.    For their failure pay employee wages in conformance with the IMWL, Defendants are liable to Plaintiff Cates and the Illinois Class for, *inter alia*, unpaid wages for three years prior to the filing of the lawsuit, punitive damages in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs. 820 Ill. Comp. Stat.

§ 105/12(a).

## COUNT IV
### Violation of the Illinois Wage Payment and Collection Act
### (On Behalf of Plaintiff Cates and the Illinois Class)

195.    All previous paragraphs are incorporated as though fully set forth herein.

196.    The Illinois Wage Payment and Collection Act ("IWPCA") requires employers to pay employees within 13 days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. *See* 820 Ill. Comp. Stat. § 115/4.

197.    If an employer fails to pay an employee all wages earned by the statutory deadline, the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of two percent (2%) of each underpayment compounded monthly, plus costs and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 115/14.

198.    Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

199.    Plaintiff Cates and the Illinois Class Members are employees for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

200.    Each Parent Defendant and Individual Defendant is an employer for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

201.    Defendant Hamilton County Coal is subject to the IWPCA's overtime requirements because Defendant Hamilton County Coal is an employer under 820 Ill. Comp. Stat. § 115/2.

202.    Defendant White County Coal is subject to the IWPCA's overtime requirements because Defendant White County Coal is an employer under 820 Ill. Comp. Stat. § 115/2.

203.    Defendants' policies and practices in failing to compensate Plaintiff Cates and the Illinois Class for hours worked in excess of 40 in a week at one-and-one-half times their regular

35

rate violate the IWPCA.

204.    As a direct and proximate result of this practice, Plaintiff Cates and the Illinois Class suffered loss of income and other damages to be determined at trial.

205.    As such, Plaintiff Cates and the Illinois Class are entitled to the underpayment, damages in the amount of two percent (2%) compounded monthly, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14.

**COUNT IV**
**Violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, *et seq*.**
**(On Behalf of Plaintiffs Thompson and Hood and the Indiana Class)**

206.    All previous paragraphs are incorporated as though fully set forth herein.

207.    Plaintiffs Thompson and Hood and other of the members of the Indiana Class voluntarily quit or are currently employed by Defendants.

208.    At all times relevant, Plaintiffs Thompson and Hood and the Indiana Class Members have been entitled to the rights, protections, and benefits provided under the IWPS, Ind. Code § 22-2-5-1, *et seq.*

209.    Each Parent Defendant and Individual Defendant is subject to the IWPS requirements because each Parent Defendant is an employer under Ind. Code § 22-2-2-3.

210.    Defendant Gibson County Coal is subject to the IWPS requirements because Defendant Gibson County Coal is an employer under Ind. Code § 22-2-2-3.

211.    During all times relevant to this action, Plaintiffs Thompson and Hood and the Indiana Class Members were "employees" of Defendants within the meaning of the IWPS. Ind. Code § 22-2-5-1(a).

212.    Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana,

36

shall pay each employee … the amount due the employee." Ind. Code § 22-2-5-1(a).

213.    Defendants have not paid Plaintiffs Thompson and Hood and Indiana Class Members who are currently employed by Defendants or who voluntarily left their employ their due and owing wages that they are entitled to by operation of law.

214.    Plaintiffs Thompson and Hood and Indiana Class Members seek to recover under the IWPS the difference between what they were paid by Defendants for regular and overtime worked and the amount to which they were entitled by law.

215.    The unpaid regular and overtime such as the amount due under federal law as a result of Defendants alleged failure to comply with the FLSA represents an "amount due the employee" under § 22-2-5-1(a).

216.    Separately, Defendants have also failed to pay Plaintiffs Thompson and Hood and the Indiana Class their wages due on their next and usual payday.

217.    By failing to compensate Plaintiffs Thompson and Hood and Indiana Class Members who are currently employed by Defendants or who voluntarily left their employ for their hours worked within the necessary time frame after they became due, Defendants are also liable to Plaintiffs under the IWPS.

218.    Defendants' violation of the IWPS were willful and were not actions and omissions made in good faith.

219.    Plaintiffs Thompson, and Hood and the Indiana Class Members are entitled to their wages due, double the amount of wages due, and reasonable attorneys' fees and costs as required by Ind. Code § 22-2-5-2.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Unjust Enrichment Class)

220.    All previous paragraphs are incorporated as though fully set forth herein.

221.    This count is brought against Defendants pursuant to the common law doctrine of unjust enrichment.

222.    Defendants have received and benefited from Plaintiffs' uncompensated labors, along with that of the other Unjust Enrichment Class Members, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

223.    At all relevant times hereto, Defendants maintained policies and practices that increased its earnings and profits by fostering a scheme of securing work from Plaintiffs and the Unjust Enrichment Class without paying for all hours worked under forty in a workweek, known as "gap time" or "straight time."

224.    Contrary to good faith and fair dealing, Defendants induced Plaintiffs and the Class to perform work while failing to pay compensation for all hours worked for weeks in which Plaintiffs and the Class worked under forty hours a week as required by law.

225.    By reason of having secured the work and efforts of Plaintiffs and the Class without paying "straight time" or "gap time" compensation as required by law, Defendants enjoyed reduced overhead with respect to its labor costs, and therefore, realized additional earnings and profits to their own benefit and to the detriment of Plaintiffs and the Class. Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

226.    Accordingly, Plaintiffs and the Unjust Enrichment Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on their own behalf and all others similarly situated:

    a.    An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b), on behalf of the Alliance Collective;

    b.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Alliance Classes;

    c.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Unjust Enrichment Class;

    d.    For unpaid wages as may be owed and prejudgment interest to the fullest extent permitted under the law;

    e.    Liquidated damages and penalties to the fullest extent permitted under the law;

    f.    Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

    g.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all the issues so triable.

Dated: April 29, 2024                      Respectfully submitted,

                                    /s/ *Camille Fundora Rodriguez*
                                    Shanon J. Carson
                                    Camille Fundora Rodriguez
                                    Lane L. Vines
                                    Michael Anderson
                                    Olivia Lanctot
                                      BERGER MONTAGUE PC
                                    1818 Market Street, Suite 3600

Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
crodriguez@bm.net
lvines@bm.net
manderson@bm.net
olanctot@bm.net

Mariyam Hussain
BERGER MONTAGUE PC
1720 W. Division St.
Chicago, IL 60622
Tel.: (773) 666-4316
mhussain@bm.net

Mark N. Foster
LAW OFFICE OF MARK N. FOSTER,
PLLC
P.O. Box 869
Madisonville, KY 42431
Tel.: (270) 213-1303
Mfoster@MarkNFoster.com

Eric Lechtzin
Liberato Verderame
Shoshana Savett
EDELSON LECHTZIN LLP
411 S. State St., Suite N-300
Newtown, PA 18940
Tel.: (215) 867-2399
elechtzin@edelson-law.com
lverderame@edelson-law.com
ssavett@edelson-law.com

John R. Kleinschmidt, III
THE LAW OFFICES OF JOHN R.
KLEINSCHMIDT III, PLLC
P.O. Box 1746
Lexington, KY 40588
Tel.: (859) 866-3097
john@employmentlawky.com

Sarah R. Schalman-Bergen
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.

729 Boylston Street, Suite 2000
Boston, MA 02116
Tel.: (617) 994-5800
ssb@llrlaw.com
osavytska@llrlaw.com

*Attorneys for Plaintiffs, the Collective and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was caused

to be served upon counsel for all Parties via the Court's ECF system on April 29, 2024.

*/s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez

42