UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RANDY BRANSON, *et al.*                                                    Plaintiffs

v.                                                         Case No. 4:19-cv-155-RGJ-HBB

ALLIANCE COAL, LLC, *et al.*                                              Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiffs' Unopposed Motion for Attorneys' Fees, Litigation Expenses, and Service Awards [DE 349], and the Parties' Joint Motion for Final Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23 [DE 350]. A Final Fairness Hearing was held on October 23, 2025. [DE 352]. The motions are ripe. For the reasons below, Plaintiffs' motion for fees, costs, and service awards [DE 349] is **GRANTED** in part and **DENIED** in part, and the Parties' joint motion for final approval of the settlement is **GRANTED** [DE 350].

## I.    BACKGROUND

### A.  Procedural History

Defendants are businesses in the natural resources industry. [DE 340-1 at 4853]. Many of them operate or operated coal mines in Kentucky, Illinois, Indiana, and West Virginia. [*Id.*]. According to the parties' joint motion for preliminary settlement approval:

> Plaintiffs alleged that Defendants acted as joint employers and violated wage and hour laws when they required the coal miners to work off-the-clock pre- and post-shift, thereby being denied proper compensation including gap time and overtime wages. Plaintiffs also alleged that Defendants failed to incorporate bonuses paid into miners' regular rate of pay for purposes of overtime.

[*Id.* at 4854]. Beginning in 2019, Plaintiffs initially filed six separate actions across the four states where Defendants operated. [*Id.*]. In the case originating in this District, plaintiff Randy Branson

filed suit "on behalf of himself and all others similarly-situated" in November 2019. [DE 1 at 1]. In order to seek approval of the global Settlement in a single venue, Plaintiffs filed a Second Amended Complaint in the *Branson* case (for purposes of the Settlement only) to encompass all the claims asserted in the six related actions. [DE 349-2 at 5168].

Settlement efforts began in early 2023 after years of "lengthy and contentious litigation and discovery" in the six separate lawsuits. [DE 340-1 at 4855]. Prior to the initial mediation in June 2023, the parties conducted "extensive discovery, including written discovery, twenty-one (21) depositions, and motion practice." [*Id.* at 5170.] After the parties were unable to reach agreement at that time, they resumed "discovery and motion practice, including the production of additional documents and the taking of an additional 82 depositions." [*Id.*] To date, the parties have taken 103 depositions in the six underlying actions. [*Id.*]

In September 2023, the Parties resumed settlement negotiations and ultimately fully-executed a settlement agreement on April 22, 2024. [DE 340-1 at 4856]. On July 10, 2025, this Court granted preliminary approval of the proposed settlement of this proposed class action for wage and hour violations, pursuant to Rule 23 of the Federal Rules of Civil Procedure. [DE 345] The Settlement Agreement [DE 340-2 ("Settlement Agreement" or "S.A.")] provides for a "non-reversionary Gross Settlement Amount of $15,205,000 for the Settlement Class," comprised of approximately "6,667 Settlement Class Members." [DE 349-2 at 5173].

According to the Settlement Agreement, the Gross Settlement Amount of $15,205,000 will cover, subject to the Court's final approval:

> (a) Settlement Payments to Settlement Class Members who do not opt out; (b) Class Counsel's attorneys' fees of up to one-third of the Gross Settlement Amount, to compensate Class Counsel for all work performed in the Lawsuits to date, plus all work remaining to be performed, including documenting the Settlement, securing Court approval, ensuring the Settlement is fairly administered and implemented,

and obtaining final approval and dismissal; (c) reimbursement of Class Counsel's reasonable out-of-pocket costs not to exceed $375,000; (d) service awards of $15,000 to each Named Plaintiff for their service to the Settlement Class in bringing and prosecuting the Lawsuits; and (e) Administration Costs.

[*See* DE 349-2 at 5173 (summarizing terms)]. After "attorneys' fees and costs, Administration Costs, and service awards," as approved by the Court, are subtracted from the Gross Settlement Amount, the remainder ("Net Settlement Amount") will be distributed to Settlement Class Members who do not opt out. [*Id.* at 5174].

Paragraph 43 of the Settlement Agreement (addressing "Class Counsel's Attorneys' Fees and Costs") states as follows:

Lead Class Counsel, on behalf of all Class Counsel, will file a motion for approval of attorneys' fees and costs prior to final approval and pursuant to the schedule ordered by the Court. Class Counsel may apply for attorneys' fees in the amount of up to one-third (1/3) of the Gross Settlement Amount as compensation for all work performed from the inception of the Lawsuits to the conclusion, including all future work in connection with the implementation of this Settlement Agreement, seeking preliminary and final approval of this Settlement Agreement by the Court, and overseeing the administration of this Settlement Agreement through the final dismissal of the Lawsuits with prejudice. Class Counsel may also seek an additional amount in reimbursement of their reasonable out-of-pocket costs and expenses in an amount up to $375,000 from the Gross Settlement Amount. Class Counsel's attorneys' fees and costs approved by the Court in the Final Approval Order will be paid out of the Gross Settlement Amount within one week after the Effective Date.

[DE 340-2 at 4894].

Following this Court's preliminary approval of the Settlement Agreement [DE 345], "Defendants electronically transferred the Gross Settlement Amount on July 24, 2025, into the interest-bearing Qualified Settlement Fund ('QSF'), established and administered by" Simpluris. [DE 349-2 at 5175]. Interest has begun accruing. [*Id.*]

### B. *Plaintiffs' Counsel – Fees and Costs*

Plaintiffs' Counsel are comprised of Co-Lead counsel Berger Montague PC ("BMPC") and the Law Office of Mark N. Foster, PLLC ("Foster"), as well as additional counsel Edelson Lechtzin LLP ("Edleson"), Lichten & Liss-Riordan, P.C. ("LLR") and the Law Offices John R. Kleinschmidt III, PLLC ("Kleinschmidt"), and local counsel[1] (collectively referred to in this Order as "Class Counsel"). [*See* DE 349 at 5146 n.1; DE 349-2 at 5168 n.2].

According to the uncontested declaration of Camille Fundora Rodriguez, a BMPC shareholder (the "Rodriguez Declaration"), "the total number of recorded hours spent on this litigation by Berger Montague PC is 12,440.5 hours, and the lodestar amount for attorney and legal professional time, based on the firm's current rates, is $9,192,258.50." [DE 349-2 at 5177]. Together with the hours expended by the rest of Plaintiffs' counsel at their respective rates, Rodriguez estimates that the total "[l]odestar incurred [as of August 11, 2025]" is "$13,749,995.20." [*Id.* at 5179]. BMPC, Foster, Edleson, LLR, Kleinschmidt, and other local counsel each undertook this litigation on a "completely contingent fee basis, expending time and incurring expenses with the understanding that there was no guarantee of compensation or reimbursement." [*Id.* at 5179; *see also id.* at 5269, 5277, 5296, 5301, 5307, 5324, 5328, 5336.] Rodriguez further estimates that "the total Litigation Expenses incurred as of August 11, 2025" are "$305,797.91." [*Id.* at 5181]. This figure includes $261,733.34 in expenses incurred by BMPC. [*Id.*].

---

[1] Local Counsel are comprised of Macey Swanson LLP, Goodwin & Goodwin, LLP, The Cates Law Firm, LLC, and Carroll Shamberg LLC. [DE 349-2 at 5168 n.2]. Counsel for each firm have submitted declarations in support of Plaintiffs' Motion, which are Exhibit 2 to the Rodriguez Declaration. [*Id.* at 5264].

### C. Named Plaintiffs – Service Awards

In thirteen declarations, the Named Plaintiffs[2] detail their personal involvement in the underlying litigation. [*See* DE 349-2 at 5185 ("Exhibit 1")]. As a component of the Settlement Agreement, the parties provided for a "Service Award of $15,000.00 [to be] allocated to each of the [Named] Plaintiffs in recognition of their time, efforts, and contributions in achieving the Settlement that will benefit the 6,667 coal miners for wage claims that otherwise would likely have not received redress. [*Id.* at 5182].

### D. Settlement Approval

On October 23, 2025, the Court conducted a final fairness hearing ("Fairness Hearing") to consider the fairness of the Settlement Agreement, hear any objections, and determine whether to grant final approval. [DE 352]. No Class Members attended, and no objections have been filed, submitted to the attorneys, or received by the Court. [*Id.*] Counsel confirmed their compliance with the Court's preliminary approval order [DE 345] and the Court discussed with counsel the background regarding the terms of the Settlement as well as Plaintiffs' request for attorney fees, costs, and service awards. [DE 352].

## II.    DISCUSSION

### A. Class Settlement

The claims of a "class proposed to be certified for purposes of settlement" may be settled "only with the court's approval." Fed. R. Civ. P. 23(e); *see also Wayside Church v. Van Buren Cnty., Michigan*, 103 F.4th 1215, 1222 (6th Cir. 2024). Under Rule 23(e), "class action settlement

---

[2] The Named Plaintiffs are Randy Branson, Daniel Cunningham, Alton Joseph Newberry, Freddie Brewer, Andrew Johnson, Shane Alexander, Rickey Cates, Walter Rettig, Broderick Hinkle, Kory Leedy, Brian Prater, Jacob Hood, and Eric Thompson. [DE 328 at 4577].

approval involves a three-step process": (1) "preliminary approval of the proposed settlement," (2) "notice of the settlement to all affected class members," and (3) a "final approval hearing." *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020) (quotation mark omitted); *see also Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).

At step one, the parties must show "that the court will likely be able to" both (1) approve the proposed settlement as "fair, reasonable, and adequate" and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)–(2). "[I]f giving notice is justified by the parties' showing," the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). At step two, after receiving notice, "[a]ny class member may object to the proposal." Fed. R. Civ. P. 23(e)(5)(A). At step three, a hearing must take place before the Court finally approves any class-action settlement. Fed. R. Civ. P. 23(e)(2).

This matter has proceeded through all three steps. For good cause shown, and as detailed further below, the Parties' joint motion for final approval of the settlement is **GRANTED** [DE 350].

### B.  Attorneys' Fees

"The party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011) (quoting *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)). When considering an award of attorney fees, a court must first determine what fee is "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable award is "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v.*

*Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The Sixth Circuit recognizes two methods for calculating attorney fees in common fund cases: the percentage-of-the-fund method and the lodestar method. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). The Court has "the discretion to select the particular method of calculation, but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Id.* at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)) (citation modified).

Although optional, Courts employing a percentage-of-the-fund method often "crosscheck" the reasonableness of the percentage award with a lodestar calculation. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020). This figure is determined "by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010) (citing *Hensley*, 461 U.S. at 433).

Here, Plaintiffs request "attorneys' fees of one-third of the Gross Settlement Amount [including accrued interest], which is currently estimated to be $5,068,333.33." [DE 349-1 at 5151]. Courts in this circuit have opted to apply the percentage-of-the-fund method where it is "consistent with the fee arrangement between Plaintiff and class counsel." *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act & Wage & Hour Litig.*, No. 3:14-CV-290-DJH, 2024 WL 5362024, at *5 (W.D. Ky. Dec. 23, 2024), *dismissed sub nom. In re Amazon.com, LLC, Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, No. 25-5057, 2025 WL 1233629 (6th Cir. Apr. 14, 2025). *See also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (explaining the percentage-of-the-fund method is generally "the preferred method for common fund cases").

7

In this case, the percentage-of-the-fund method is consistent with the contingency fee arrangement between Plaintiffs and Class Counsel as well as the Settlement Agreement between the parties. It also "more accurately reflects the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516). Moreover, any concern that "a percentage award may . . . provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested" is mitigated by the fact that this litigation has been ongoing for six years, and the size of the settlement award. *Id.* (quoting *Rawlings*, 9 F.3d at 516). [*See also* DE 349-1 ("Plaintiffs' Counsel believe that the Settlement here may be one of the largest if not the largest settlement achieved against the coal industry for wage and hour claims.")]. The Court will therefore apply the percentage-of-the-fund method in this case.

The Court next considers whether the proposed award of attorney fees is reasonable. The Sixth Circuit has identified six factors which govern the reasonableness of class action fees:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir. 1996).

Application of these factors supports approving the requested award. Plaintiffs estimate that, subject to the Court's approval of the requested award, the "average recovery for the 6,667 Miners would be over $1,400." [DE 349-1 at 5153 n.7]. The value to the class members is substantial. *See In re Amazon.com*, 2024 WL 5362024, at *5 (finding "highest estimated Individual Settlement Payment [of] $3,547.39, and average estimated Individual Settlement Payment [of] $32.94" provided "clear" value to class members even after 10 years of litigation). As explained below with respect to the lodestar calculation, there is evidence that the requested award is

8

substantially lower than value of the services provided or, at the very least, comparable. Finally, this case is complex, as demonstrated by the parties on both sides retaining attorneys experienced in complex litigations and FLSA actions. [*See* DE 349-1 at 5156]. As other courts have noted, society has a strong interest in rewarding plaintiff attorneys who take such cases and "achieve a result that the individual class members probably could not obtain on their own," particularly in the wage-and-hour context. *Est. of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (citing *Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017)).

Additionally, courts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases. *See, e.g., Osman v. Grube*, No. 3: 16–cv–00802–JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (finding one-third of a $500,000.00 settlement to be reasonable a reasonable fee in a FLSA collective action); *Thorn v. Bob Evans Farms, Inc.*, No. 2: 12-cv-00768, 2016 WL 8140448, at *2-3 (S.D. Ohio Feb. 26, 2016) (approving a 32.92% fee in a FLSA and Rule 23 settlement agreement); *see also Hebert v. Chesapeake Operating, Inc.*, No. 2: 17-cv-852, 2019 WL 4574509, at *4-8 (S.D. Ohio Sept. 20, 2019) (rejecting a 40% fee in a case involving FLSA and class action claims while finding 33% to be a "typical" common fund fee award).

Although the Court finds that the requested fee is reasonable, the Plaintiffs' lodestar arguments warrant some discussion. Plaintiffs assert that the lodestar cross check shows the percentage-of-the-fund calculation is reasonable "as Plaintiffs' Counsel's lodestar far exceeds the requested fee." [DE 349-1 at 5187]. Plaintiffs submitted evidence that well over 16,000 hours of attorney time were expended on this case. [*See id.* at 5185]. They estimate that a conservative

calculation based on a local rate of $500 per hour yields a lodestar of $8,000,000, or around 67% of the requested fee. [*See id.* ("16,000 hours times $500 per hour equals a $8,000,000 hypothetical lodestar . . . [and] $5,068,333.33 requested fee divided by $8,000,000" "yields a negative multiplier of 0.67.")]. And they conclude that this negative multiplier supports the reasonableness of the fees. [DE 349-1 at 5157].

True, a "negative multiplier" between a lodestar calculation and a percentage-of-the-fund calculation is an indicator that the latter calculation is reasonable. *See Williams v. CG-HHC, Inc.*, No. 5:22-CV-1003, 2024 WL 1514587, at *3 (N.D. Ohio Apr. 8, 2024) (citing *Macaluso v. Zirtual Startups, LLC*, No. 2:19-CV-3616, 2021 WL 3639665 (S.D. Ohio Aug. 17, 2021)). *See also Southard v. Newcomb Oil Co., LLC*, No. 3:21-CV-607-DJH-CHL, 2024 WL 4263639, at *4 (W.D. Ky. Sept. 23, 2024) ("negative multiplier of 0.63" supported percentage of fund fee request amounting to 36% of the total settlement amount). Even so, Plaintiffs have not provided enough information to evaluate whether the claimed lodestar is, itself, reasonable. Lodestar calculations require both proof of the "number of hours *reasonably expended* on the case by an attorney" and the attorney's "*reasonable* hourly rate." *Adcock-Ladd*, 227 F.3d at 349 (emphasis added).

Here, Plaintiffs have only provided the Court with the total number of hours worked per attorney. Without more, it is impossible to determine whether each attorney's time expenditures were reasonable. Nor have plaintiffs shown there is a reasonable basis to apply an "average local rate" of $500/hour, let alone the out-of-town rates of BMPC's attorneys and non-legal professionals—which average out to around $740/hour. [*See* DE 349-2 at 5178]. None of the cases cited by Plaintiffs establish that $500 is a reasonable average rate for employment attorneys in this

venue, or within the venues in which the underlying lawsuits were filed in.[3] *See Miller v. Davis*, 267 F. Supp. 3d 961, 995 (E.D. Ky. 2017), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) (explaining that determining a reasonable hourly rate requires initially assessing "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record"); *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (before considering whether out-of-town attorney rate is reasonable, courts must determine "whether hiring the out-of-town specialist was reasonable in the first instance"). Indeed, courts in this district have found much lower hourly rates to be reasonable in similar circumstances. *See York v. Velox Express, Inc.*, No. 3:19-CV-00092-CHL, 2022 WL 20804127, at *11 (W.D. Ky. Mar. 25, 2022) (the court observing that it had "consistently found rates within the $300 to $400 dollar range to be reasonable for highly experienced attorneys prosecuting FLSA actions in the local market"). And the national rate of "$500 to $750 per hour range" applied in *Thompson* was for "*partner level* employment lawyers" only. *Thompson v. Seagle Pizza, Inc.*, No. 3:20-CV-16-DJH-RSE, 2022 WL 1431084, at *12 (W.D. Ky. May 5, 2022) (emphasis added). In sum, the Court does not find

---

[3] The underlying lawsuits were filed in the Eastern District of Kentucky, the Western District of Kentucky, Hopkins County, Kentucky, the Northern District of West Virginia, the Southern District of Illinois, and the Southern District of Indiana. *See Branson, et al. v. Alliance Coal, LLC, et al.*, No. 4:19-cv-00155 (W.D. Ky.); *Brewer v. Alliance Coal, LLC, et al.*, No. 7:20-cv-0041 (E.D. Ky.); *Johnson, et al. v. Alliance Coal, LLC, et al.*, No. 21-CI-157 (Ky. Cir. Ct. - Hopkins); *Rettig, et al. v. Alliance Coal, LLC, et al.*, No. 2:21-cv-00008 (N.D. W. Va.); *Cates v. Alliance Coal, LLC, et al.*, No. 3:21-cv-00377 (S.D. Ill.); and *Prater, et al. v. Alliance Coal, LLC, et al.*, No. 3:21-cv-00066 (S.D. Ind.).

Plaintiffs' discussions regarding the lodestar calculation helpful for determining the reasonableness of the requested fee. [4]

Ultimately, however, the Court finds that the requested fee is reasonable. Even severely reducing the average hourly rate to $300/hour and the total hour expenditure to 12,000 hours would yield a hypothetical lodestar of $3,600,000. This would result in a "lodestar multiplier" of approximately 1.4 (i.e., $5,068,333.33 / $3,600,000) which is still "well within the range of multipliers considered reasonable by courts in the Sixth Circuit for FLSA and wage and hour cases." *See Thompson*, 2022 WL 1431084, at *12 (collecting cases). Taken together with the factors discussed above, the Court is satisfied that the requested fee will provide adequate compensation without producing a windfall for Class Counsel. *Adcock-Ladd*, 227 F.3d at 349.

Accordingly, Plaintiffs' request for an attorney fee award of one-third the total Gross Settlement Amount, including accrued interest of the date of this Order, is **GRANTED**.

### C. Costs

Under the common fund doctrine, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). In determining whether the requested expenses are

---

[4] A review of the caselaw shows that courts often apply a more deferential review when lodestar calculations are offered as a cross checks, as opposed to when lodestar calculations are offered as direct support for an award figure. *Compare Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014) (vacating award of attorney fees based on lodestar calculation because district court "did not acknowledge this court's prevailing legal standard for determining the reasonable hourly rate for the local market [and] did not evaluate the reasonableness of the hours spent") *with*, *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019) (finding lodestar cross check supported fee request where plaintiffs provided a chart with only the total hours for each attorney). Nevertheless, the Court declines to rubberstamp the requested fee on the basis of an unsupported lodestar calculation.

compensable, the Court has considered "whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases." *Id.* (citing *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)).

Here, Plaintiffs seek "reimbursement of costs and expenses up to $375,000.00 for prosecuting the settled claims on behalf of the Class, in accord with the terms of the Settlement." [DE 349-1 at 5158-59]. Plaintiffs currently estimate "$305,797.91" in costs, "which include[] costs related to experts and consultants, court fees, transcripts, travel, computer research, and copying and printing, among others." [*Id.*]. "The requested reimbursement was included in the Court approved Notice, and no Settlement Class Member has objected." [*Id.*].

In support of the requested reimbursement, Plaintiffs offer (1) the Rodriguez Declaration, which provides the totals of Class Counsel's expenses [DE 349-2 at 5181]; and (2) declarations from representatives of the Class Counsel further breaking down the expense amount into subtotals by category.[5] [*See id.* at 5180, 5269, 5277, 5296, 5308, 5323, 5337]. The categories of expenses include "Computer Research, "Copying and Printing," "Data Hosting," "Expert/Consultant Fees," "Filing and Misc. Fees," "Postage and Delivery," "Mediation Fees," "Telephone," "Transcripts," "Travel." [*Id.* at 5180]. Class Counsel aver generally that the expenses are documented and that they were "reasonable and necessary" to the prosecution of this case. [*See, e.g.*, *id.*].

As with Plaintiffs' proposed lodestar calculation, the Court finds that Plaintiffs have not provided enough information for the Court to determine whether the requested reimbursements are reasonable. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (explaining "class counsel is entitled to reimbursement of all *reasonable* out-of-pocket litigation expenses and costs

---

[5] Excluding counsel Kleinschmidt and Cates, which have no documented expenses. [*See, e.g.,* DE 349-2 at 5301, 5327].

in the prosecution of claims and settlement") (emphasis added). [*See also* DE 340-2 (Settlement Agreement providing that "Class Counsel may also seek an additional amount in reimbursement of their *reasonable* out-of-pocket costs and expenses in an amount up to $375,000") (emphasis added)]. For example, with respect to BMPC's alleged "$28,147.57" expense for "Computer Research," Plaintiffs fail to specify whether counsel pays a blanket access fee for legal research. This fact is important for evaluating the reasonableness of the research expense because "[i]f the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time lined the walls of legal offices, which was treated as overhead." *Smith v. Serv. Master Corp.*,,, 592 F. App'x 363, 368 (6th Cir. 2014).

Accordingly, Plaintiffs' request for costs is **DENIED**. Plaintiffs may move again for costs and should provide appropriate documentation, including expense reports, sufficient to show that the requested reimbursement is reasonable.

### D. *Incentive Payments*

Incentive payments, or "service awards," generally "do[ ] not raise a red flag" in this context "because the class representative and class member are not similarly situated in regard to ... the incentive payment: the class representative did extra work and took extra risk to earn that." *Newberg on Class Actions* § 13:56. Requests for incentive awards are nevertheless "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

Although the Sixth Circuit has not defined the outer limits for service awards, a survey of the precedent suggests service awards are appropriate if, absent proof of the lead plaintiff's

extraordinary involvement, they are at most 10 times the amount that the unnamed class members would receive. *See, e.g., Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020) (reducing incentive award from the "100 times greater" $10,000 incentive award to a "10 times greater" incentive award of $1,000); *Hodges v. 77 Grandville*, No. 19-81, 2022 WL 456769 at *3 (W.D. Mich. Feb. 15, 2022) (denying incentive award of $10,000 because it was 50 times greater than what the unnamed class members would have received).

Here, Plaintiffs request "Service Award[s] of $15,000" for each Named Plaintiff. [DE 349-1 at 5159]. As discussed in this Court's prior order [DE 345], sizable awards of $15,000 might reflect inequitable or preferential treatment to the named representatives' benefit. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013). Relevant considerations include the extent of Plaintiffs' personal involvement in litigating these cases and the proportionality of the service awards to other class members' recoveries. *See Hadix*, 322 F.3d at 897.

Plaintiffs assert that "[t]he combined total of the Service Awards is $195,000," or "less than 1.3% of the $15,205,000 gross settlement achieved for the Settlement Class," and that the proposed service awards are "approximately within a ten-fold" of the estimate average settlement payment of "$1,439 for each Settlement Class Member," and thus "approximately" within the upper-limit on such awards recognized in the Sixth Circuit. [DE 349-1 at 5162 n.11 (citing *Sellards v. Midland Credit Mgmt., Inc.*, No. 1:20-cv-02676, 2023 WL 3869023, at *6 (N.D. Ohio May 2, 2023), report and recommendation adopted, 2023 WL 3641447 (May 25, 2023))].

In *Sellards*, the court found that a similar incentive award of $15,000 was appropriate when the average estimated class payment was "a little over $15,000." 2023 WL 3869023, at *6. The court noted that the named plaintiff's "involvement in the case was far from negligible, but was

15

not as extensive as it might have been, had the case not been stayed and discovery taken place." *Id.* Still, the court found that the incentive award was reasonable because the award was not so disproportional as to require court intervention. *Id.* (citing *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6444514, at *2, 2018 U.S. Dist. LEXIS 207678, at *13-14 (E.D. Mich. 2018) (reducing the class representatives award from 50 times to 20 times the class members' awards)).

Here, in contrast, Named Plaintiffs were extensively involved in the litigation up to and including the settlement process. Named Plaintiffs worked with Class Counsel to:

> prepare the complaints and amended pleadings; actively participate in an extensive discovery process which included searching for and producing documents, responding to interrogatories and requests for production, preparing for deposition, and attending deposition; consulting with counsel throughout this litigation; and reviewing and approving the global settlement that was only reached after several rounds of mediation conducted by two mediators.

[DE 349-2 at 5182]. In addition to being subjected to intrusive discovery, Named Plaintiffs also report facing certain personal risks, including the risk that their involvement in the litigation would threaten their reputations in the community and with respect to future employment opportunities, the risk of retaliation from Defendants. [*See, e.g., id.* at 5188].

Accordingly, the Court finds the proposed service awards reasonable and **GRANTS** Plaintiffs' request.

### III.    CONCLUSION

The Court has considered all matters submitted to it at the Fairness Hearing, the pleadings on file, the applicable law, and the record. For the reasons discussed herein, Plaintiffs' motion for fees, costs, and service awards [DE 349] is **GRANTED** in part and **DENIED** in part, and the Parties' joint motion for final approval of the settlement is **GRANTED** [DE 350]. The Court **ORDERS** as follows:

16

1.      This Order and Final Judgment (the "Final Approval Order" or "Order") incorporates by reference the definitions in the Settlement Agreement and all capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement, unless otherwise set forth below.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, namely, Randy Branson, Daniel Cunningham, Alton Joseph Newberry, Freddie Brewer, Andrew Johnson, Shane Alexander, Rickey Cates, Walter Rettig, Broderick Hinkle, Kory Leedy, Brian Prater, Jacob Hood, and Eric Thompson (collectively, "Plaintiffs" or "Named Plaintiffs"), individually and on behalf of the Settlement Class defined in the Settlement Agreement (D.N. 340-2), and Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P. ("ARLP"), Alliance Resource Operating Partners, L.P., Alliance Resource Management GP, LLC (together, the "Alliance Defendants"), Thomas Wynne, Layne Herring, Webster County Coal, LLC, Warrior Coal, LLC, River View Coal, LLC, Excel Mining, LLC, MC Mining, LLC, Sebree Mining, LLC, Hopkins County Coal, LLC, Gibson County Coal, LLC, Mettiki Coal (WV), LLC, Tunnel Ridge, LLC, Hamilton County Coal, LLC, and White County Coal, LLC (collectively with the Alliance Defendants, "Defendants").

3.      The Court preliminarily approved the Settlement Agreement by entering the Preliminary Approval Order dated July 10, 2025 (D.N. 345) and notice was subsequently given to all Settlement Class Members pursuant to the terms of the Settlement Agreement and Preliminary Approval Order.

4.      The Court finds, for settlement purposes, that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement

17

Class; (d) Plaintiffs and Class Counsel will fairly and adequately protect the interest of the Settlement Class; (e) the questions of law or fact common to the Settlement Class Members, and which are relevant for settlement purposes, predominate over the questions affecting only individual Settlement Class Members; and (f) certification of the Settlement Class is superior to other available methods for the fair and efficient adjudication of the controversy.

5.     In light of the findings set forth in the Preliminary Approval Order (D.N. 345), the Court certifies the following Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, which includes the Named Plaintiffs, Opt-In Plaintiffs, and all individuals who worked for one or more of the Defendants as an hourly coal miner or similarly titled position (non-exempt from the FLSA), as defined below:

    i.    All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Webster County Coal, LLC, River View Coal, LLC and/or Warrior Coal, LLC between November 4, 2014 and April 22, 2024 ("Branson Relevant Class Period");

    ii.    All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Excel Mining, LLC and/or MC Mining, LLC between March 27, 2015 and April 22, 2024 ("Brewer Relevant Class Period");

    iii.    All current and former non-exempt employees who performed work in the Commonwealth of Kentucky in underground mines or surface coal preparation plants owned or operated by Sebree Mining, LLC or Hopkins County Coal, LLC between June 24, 2015 and April 22, 2024 ("Johnson Relevant Class Period");

    iv.    All current and former non-exempt employees who performed work in the State of Illinois in underground mines or surface coal preparation plants owned or operated by Hamilton County Coal, LLC or White County Coal,

LLC between April 9, 2011 and April 22, 2024 ("Cates Relevant Class Period");

    v.    All current and former non-exempt employees who performed work in the State of Indiana in underground mines or surface coal preparation plants at the Gibson North and Gibson South mines, and were employed by Gibson County Coal, LLC between April 13, 2018 and April 22, 2024 ("Prater Relevant Class Period"); and

    vi.    All persons who filed, prior to the date of execution of the Parties' Settlement Agreement, a consent to join in Rettig, from the date three years prior to the filing of each such consent, and all other current and former non-exempt employees who performed work in the State of West Virginia in underground mines or surface coal preparation plants owned or operated by Tunnel Ridge, LLC or Mettiki Coal (WV), LLC between April 1, 2021 and April 22, 2024 ("Rettig Relevant Class Period").

*Accord* S.A. ¶¶ 17(Y)(i-vi).1[6]

6.    The Court appoints, for purposes of the Settlement, Plaintiffs Randy Branson, Daniel Cunningham, Alton Joseph Newberry, Freddie Brewer, Andrew Johnson, Shane Alexander, Rickey Cates, Walter Rettig, Broderick Hinkle, Kory Leedy, Brian Prater, Jacob Hood, and Eric Thompson (collectively, "Plaintiffs") to serve as the Settlement Class Representatives, and Service Awards of $15,000 each are approved for their efforts and services in bringing and prosecuting this Action on behalf of the Settlement Class Members.

7.    The Court appoints, for purposes of the Settlement, Berger Montague PC; Law Office of Mark N. Foster, PLLC; Lichten & Liss-Riordan, P.C.; Edelson Lechtzin LLP; and the Law Office of John R. Kleinschmidt III, PLLC to serve as Class Counsel. The Court further appoints Shanon J. Carson, Camille Fundora, Rodriguez, Lane L. Vines, and Mariyam Hussain of

---

[6] Collectively, these time periods are referred to herein as the "Applicable Class Period."

Berger Montague PC, and Mark N. Foster of Law Office of Mark N. Foster, PLLC to serve as "Co-Lead Class Counsel."

8.    The Court approves the requested attorneys' fees in the amount of one-third of the Gross Settlement Amount. The Court grants Plaintiffs leave to move again for out-of-pocket costs not to exceed $375,000, consistent with this opinion.

9.    The Court approves the costs of settlement administration, not to exceed $31,693, payable to the Settlement Administrator, Simpluris, Inc.

10.    Pursuant to the Federal Rules of Civil Procedure and applicable law, the Court approves the Settlement as set forth in the Settlement Agreement and finds that: (a) the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class; (b) there was no collusion in connection with the Settlement; (c) the Settlement was the product of informed, arm's-length negotiations among competent, able counsel with the assistance of a well-respected mediator; and (d) the record is sufficiently developed and complete to have enabled Plaintiffs and Defendants to have adequately evaluated their positions and reached an informed settlement.

11.    Accordingly, the Court authorizes and directs implementation and performance of all terms of the Settlement Agreement and this Order. The Parties are to bear their own costs except as, and to the extent provided in, the Settlement Agreement and this Order. Upon the Effective Date, as defined in the Settlement Agreement and by operation of this Order, Plaintiffs and each Settlement Class Member who did not properly and timely exclude themselves from the

Settlement,[7] shall be bound by the terms of the Settlement as set forth in the Settlement Agreement and this Order, shall be deemed to have released, dismissed and forever discharged the Released Claims against each and every one of the Released Parties, with prejudice and on the merits, without costs to any of the Parties, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any of the Released Claims against any of the Released Parties in any forum of any kind, whether directly or indirectly, whether on their own behalf or otherwise.

12.     The Notice given to the Settlement Class was the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through reasonable effort, and constituted due and sufficient notice to all persons. The form and method of the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, applicable case precedent, and due process. Thus, it is hereby determined that all Settlement Class Members are bound by this Final Approval Order.

13.     The Court approves the Plan of Allocation submitted by Plaintiffs' Counsel whereby each eligible Settlement Class Member will receive a share of the Net Settlement Fund based on the plan of allocation set forth in the Settlement Agreement.

14.     In accord with the Settlement Agreement, following the Effective Date, Settlement Awards will be distributed as settlement checks to participating Settlement Class Members, who will then have 150 days in which to deposit or cash their checks. If at the conclusion of that

---

[7] According to the sworn declaration of the Settlement Administrator, the following persons, and only the following persons, properly and timely excluded themselves from the Settlement: Zachary Jarvis, Sergio Mendoza, Dennis Ray O'Leary, Larry Gene O'Leary, and Joel R. Reid. No other person has filed any request, timely or untimely, for exclusion from the Settlement, and no person has filed an objection as to any aspect of the Settlement.

acceptance period, plus sixty (60) days, there are any monies remaining in the QSF from the Gross Settlement Amount as a result of uncashed Settlement Checks attributable to the Settlement Class, those funds shall be distributed equally between to non-profit *cy pres* recipients, Kentucky Legal Aid and The Kentucky Chamber Foundation, Inc.

15.    Neither the Settlement nor the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement or the Settlement Agreement: (a) shall be used, offered, or received against any of the Released Parties as evidence of, or be deemed to be evidence of, any presumption, concession, or admission by any of the Released Parties with respect to the truth of any fact alleged by any of the Parties or the validity or lack thereof, of any claim or counterclaim, or the existence of any class that has been or could have been asserted in the Action or in any other litigation against Defendants, or the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation against Defendants, or of any liability, negligence, fault or wrongdoing of any of the Released Parties; (b) shall be used, offered or received against the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Parties, or against any of the Released Parties as evidence of any infirmity in the claims asserted in the Action;  (c) shall be used, offered or received against any of the Released Parties as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement; provided, however, that the Released Parties may refer to the Settlement Agreement and Settlement to effectuate the liability

22

protection granted them hereunder; and (d) shall be used or construed against any of the Released

Parties as an admission or concession that the consideration to be given hereunder represents the

amount which could be or would have been recovered after trial. Any of the Released Parties may

use or file the Settlement Agreement and/or this Final Approval Order in any other action that may

be brought against them in order to support a defense, claim or counterclaim, including, but not

limited to, based on principles of res judicata, collateral estoppel, release, good faith settlement,

judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense

or counterclaim.

16.     Without affecting the finality of this Final Approval Order, in any way, this Court

hereby retains continuing jurisdiction over the administration, consummation and enforcement of

the Settlement Agreement.

17.     There is no just reason for delay in the entry of this Final Approval Order and Entry

of Judgment and immediate entry by the Clerk of the Court is expressly directed.

18.     In accord with the provisions of the Settlement Agreement (including without

limitation, paragraphs 39 and 48), following the Acceptance Period, the Parties shall file a joint

Notice, notifying the Court that the Acceptance Period has concluded, as well as a notice of

voluntary dismissal with prejudice of the alleged FLSA claims pursuant to Federal Rule of Civil

Procedure 41. Once the Notice is filed, and following the Parties' Rule 41 dismissal of FLSA claims, the Court will dismiss this case with prejudice.

**SO ORDERED.**

Rebecca Grady Jennings, District Judge
United States District Court

November 3, 2025

Cc:    Counsel of record